## CAROLINE SIMMONS *v.* S. B. THOMAS, late Sheriff etc.

1. HUSBAND AND WIFE.—There may subsist the relation of creditor and debtor between husband and wife, but on account of the marriage relation the court of chancery is the proper forum to litigate, the rights of the wife, adversary to the husband. ·

2. JUDGEMENT IN FAVOR OF WIFE AGAINST HUSBAND.—Judgment at law in favor of the wife against her husband (though the suit might have been abated on the plea of coverture), is nevertheless valid. Such judgment cannot be assailed collaterally on any other ground than crime, malice, or fraud, to the injury of the creditors of the judgment debtor. In many respects the married woman's laws makes the wife a *feme sole*, enables her to contract and sue at law.

3. HUSBAND AND WIFE.—Though, by the common law, husband and wife were regarded as one person, courts of equity look to the substance and not to the form of transactions between them, and regard them as distinct persons, whenever they have, as respects each other, separate property interests.

4. PRACTICE.—"A man shall not assign for error that which he might have pleaded in abatement; for it shall be accounted his folly to neglect the time for taking that exception."—*Lord Bacon.* From this rule of the common law, it follows that if a defendant fail to take proper advantage of the disability of the plaintiff, such as coverture for example, but demurs or pleads in bar, he must be taken as having waived the disability, and cannot take advantage of it on error.

Error to the circuit court of Hinds county. WATTS, J.

*C. A. Mount,* for plaintiff in error,

Insisted that the universal rule is to apply monies arising under sales upon execution to the oldest judgment creditor, unless he has willingly suspended his lien and thereby lost his priority. Michie vs. Planters' Bank, 11 How., 13.

In this case, Andrew Thomas had no judgment lien subsisting—if the minutes of the court have been erased, even fraudulently. The verdict and judgment do not correspond,

the *verdict* being for the defendant, without saying which, and the *judgment* being against *defendant*, without saying which. The judgment against Simmons is not enrolled as required by statute, Revised Code, art. 260., p. 520, and hence creates no lien upon his property.

2d. But it is under the second error assigned, that the difficulty has mostly arisen. The files of papers in the causes could have only been properly introduced to show that the executions and judgments corresponded. But the avowed object was to invalidate the senior judgment, by showing the relation of husband and wife. As the validity of that judgment could not be attacked collaterally, it was a gross error to admit the files for that purpose.

3d. Under the third error, we will only say that the evidence of the witness, Warner, ought not to have been heard in any aspect of this case. As a judgment cannot be attacked in any way collaterally, of course they cannot be so assailed by *parol.*

4th. Under the fourth assigned error, it is insisted that, on this ground alone, this judgment ought to be reversed. The court below did in *totidum verbis*, declare its own judgment void for want of jurisdiction.

The last assigned error is sufficiently covered by what has already been said.

*G. L. Potter,* on same side.

This was a contest between persons claiming as judgment creditors of S. E. Simmons, for the appropriation of money arising from the sale of his property. In the case of Simmons vs. S. E. Simmons, the money was made by a sale of the land under the execution to June term, 1869; the execution in favor of Andrew Thomas being levied at the same time.

When plaintiff sued S. E. Simmons, he stood in the ordinary attitude of a defendant to the action at law, and was bound like other defendants, to plead. If plaintiff was a married woman he could only plead it in abatement, if she had any

interest in the suit; but if she had none, it could be pleaded in bar.  1 Chitt. Pl., 22; Miner v. Milner, 3 Term R., 631; Candall v. Shaw, 4 Term R., 361; Morgan v. Painter, 6 Term R., 265; Comyn's Dig., Title, abatement, E. 6, H., 42; Lee v. Maddox, 1 Leonard, 165; Perry v. Boileau, 10 S. & M., 210; Lyman v. Allen, 7 Vermt., 508; Ropp v. Elliott, 1 Yeates, 185.  There are many cases wherein a wife can sue alone, 1 Bright, Husband and Wife, 69. et. seq.

So where the wife is sued alone, the judgment seems good until reversed.  The husband in such case might bring a writ of error to reverse the judgment, and it is said he has no other remedy.  2 Saunder's Rep., 101, d. e.  This shows that such a judgment is not *void;* but operative and valid until *reversed.*  This is the necessary consequence of the rule which, in cases where the wife has an interest, requires her coverture to be pleaded in abatement.  The judgment cannot be assailed by strangers, nor can they set up coverture collaterally to avoid the judgment.  Such is clearly the rule where the wife sues a third party—is the case different where she sues her husband?  Clearly not.

To prove the fact of a judgment, the record is evidence against all persons, it is conclusive evidence of the fact of the rendition of the judgment, and *of all the legal consequences resulting from that fact,* whoever may be the parties to the suit in which it is offered in evidence.  1 Greenl. Ev., § 538.

2d.  Whatever may have been the rule at common law, our code has greatly enlarged the capacity of the wife, and permits her to act in many cases, as a *feme sole.*  She may rent her property, make contracts for the use thereof, and loan her money, and take securities therefor, " in her own name," contract for supplies, etc., etc., precisely as a *feme sole.*  Rev. Code, art. 25, p. 336; also art. 23 and 24.  A gift from husband to wife is good.  Smith v. Allen, 39 Miss., 469.

It is also expressly provided that, " in addition to the remedies now existing by the common law," certain rights of action at law, are given.  " If the husband will not join her,

she may sue alone for the recovery of any of her property or rights." Rev. Code, art. 26, p. 336. May she not even sue her husband, at law, if he consents? There is no reason why she may not. In such a case the husband cannot join her in the suit, it is true. But her demand is her own separate right, and her right of recovery in some form, can not be questioned. Having a separate legal right against her husband, growing out of her separate estate, and capacitated as she is, both by the common and statute law, to sue as a *feme sole*, she clearly has the right to sue her husband at law to enforce it.

The Pennsylvania statutes, like our own, vests in the wife her separate property. Statute Laws Penn., 996. And the courts of that state hold that, by force of this statute, the wife may, in a proper case, sue alone, " as where the husband dissents, *or the suit is against him.* " Goodyear v. Rambeau, 13 Penn. Rep., 480 ; 47 Penn. Rep., 307; Tyler on Infancy and Coverture, 728. So also in Illinois ; Emerson v. Clayton, 32 Ill., 493. So in Iowa; Rodemoyer v. Rodman, 5 Iowa, 428, Code, p. 426.

3d. We will now consider whether Andrew Thomas was in a condition to assail this judgment. His suit was against John Cavitt and S. E. Simmons. Cavitt was duly summoned, and Simmons filed his plea. Then comes the erased entry, showing that Cavitt " came not, but made default," then the verdict for the defendant for a certain sum. Then a judgment for plaintiff against defendant for the same sum. Viewing the whole record of the proceeding in that case below, it is clear that Thomas has no final judgment whereon he could issue execution against Simmons, and was not in a position to begin this contest, and had no pretense of claim to the money.

4th. The record shows no proper enrollment of the judgment in favor of Thomas as against Simmons. It shows the enrollment of a judgment against Cavitt, none against Simmons. The statute is express that the entry of the enrollment shall be *under the proper letter of the alphabet*, the

names of *each and every defendant*, to said judgment, etc.
Rev. Code, art. 260, p. 524. Simmons' name is not on the
roll at all.

*T. J. Wharton*, for defendants in error,

Contended that the judgment against S. E. Simmons in
favor of his wife was absolutely void, and that there was no
error in the judgment of the court directing the application
of the money in satisfaction of Thomas' judgment. The
judgment in favor of Mrs. Simmons was absolutely void for
want of jurisdiction of the subject matter, as well of the
party. The court could not take jurisdiction of the parties,
because of the relation of husband and wife existing between
them. This relation was fully proved by the testimony of
the witness, Warner.

At common law there was but one case in which a married
woman could sue alone. 1 Bl. Com. Marg. p. 443.

The only case under our statute in which she is authorized
to sue alone, is "where her husband will not join her." Rev.
Code, art. 26, p. 336. It is by the aid of our statute, alone,
that a married woman can sue alone in a court of common
law. Levy and wife v. Darden, 38 Miss., p. 57.

2d. Again, there was no jurisdiction of the subject matter,
to-wit: rents and hires of the wife's separate estate, by the
husband. Equity, alone, could take jurisdiction in this case.
Wiley & Co. v. Gray et al., 36 Miss. Rep., 510 ; Allen v. Miles
& Adams et al., 26, p. 640.

If the judgment was void, the party in whose favor it was
rendered can claim no benefit under it; and it is competent
to attack it in a collateral way. Bell et al. v. Tombigbee
Railroad Company, 4 S. & M., 547 ; Green v. Creighton, 10 S.
& M., 159 ; Work v. Harper, 24 Miss., 517 ; Wall v. Wall, 28
Miss., 409.

The omission of Mrs. Simmons to state in her declaration
the marriage relation between her and her husband, was a
fraud on the jurisdiction of the court. Had it been stated,
the court could not, and would not have taken jurisdiction

and rendered the judgment it did, in her favor. Plummer v. Plummer et al., 37 Miss., 185.

As to the objection of Mrs. Simmons to the introduction of the records in the other cases, as evidence on the hearing of the motion, we think there was no error. By art. 23, p. 481, Rev. Code, it is made the duty of the clerk to draw up " the proceedings of the court each day," and when corrected they shall be signed by the court.

This court has decided that a record imports absolute verity, and must be tried by itself. Manderville et al. v. Stocket et al., 28 Miss., 388; Shirley et al. v. Fearne, 33 Miss., 653. By art. 10, p. 574, Rev. Code, it is made a penitentiary offense in any one to " erase any word or letter of a record, or change any record," and this court must presume these lines were not made by any person unauthorized to change the record.

But we insist that the judgment is not void for those reasons, but merely voidable, and may be attacked in a collateral proceeding. Hardy v. Gholson, 26 Miss., 70; Work v. Harper, 24 Miss., 517.

Finally, we insist that the word defendant in the recital of the judgment against Cavitt and Simmons, in favor of Andrew Thomas, which recites the verdict of a jury as being for the defendant, was a mere clerical error, as shown by the judgment on such verdict, and the fact that the issue before the jury, was the general issue, without notice of set off. Garrett v. Felt & Reed, 31 Miss. Rep., 137.

SIMRALL J:

Samuel B. Thomas, late sheriff of Hinds county, brought in the circuit court of Hinds county, a sum of money raised by sale, under executions, of the property of S. E. Simmons, judgment debtor, and submitted to the court its appropriation.

The money was realized under executions, as follows: In favor of Caroline Simmons against S. E. Simmons, on judgment dated 17th May, 1866, for $16,651 30, in favor of Andrew Thomas; against same defendant on judgment recov-

ered 23d November, 1866, for $323 45, in favor of J. B. Thomas; on judgment against the same defendant, recovered the 22d day of November, A. D. 1866, for $840 88.

Caroline Simmons and Andrew Thomas, each claimed the money. The court below ordered its application to the judgment in favor of Andrew Thomas. The evidence adduced at the hearing, was embodied in a bill of exception, and the case is brought here by the plaintiff in error, who assigns for error, that the court erred in not directing the money to be paid on her judgment.

It was proved that Caroline Simmons, at the date of instituting her suit, and the recovery of judgment, was the wife of S. E. Simmons, the debtor; that she owned separate property, real and personal, derived from her father, D. O. Williams.

The record of the two judgments, were also in evidence.

The point which has given us most·trouble, is whether the judgment in favor of the wife against the husband, being rendered by default in a court of law, is or not void.

The common law regarded the husband and wife as one person, therefore the husband could not give an estate to the wife, nor the wife to the husband. Co. Litt., 187 b; 102 a. So a husband cannot contract with his wife. 2 Wilson, 254. This is the doctrine wherever the strict common law prevails. In equity, where the principle is otherwise—two centuries ago—it was held in England that a gift by husband to wife, without a trustee, was good in equity.

It has long since been conceded in the equity courts, that post-nuptial settlements and contracts may be upheld without a trustee. Story Eq., § 1380; 4 Barb., 404; 9 Paige, Ch. R., 363; 2 Russ & Mylne, 197.

The reason why access was refused to a court of law, to the wife, was for the want of legal parties, and also, on reasons of public policy. Whilst this was so, the wife was, as to her private property, a *feme sole*, and could charge it with debts. And the rule at law became so far relaxed, that there might be transactions and dealings between each other, which

would be recognized and upheld in equity. A husband gave his note to his wife, for money borrowed from her, and which she had, as part of a former husband's estate. This created a liability enforceable in equity. 10 Ohio Rep., 371. Nor does it matter from what source the money comes to the wife, if it was her separate property. 3 P. Wms., 377; 3 Paige, 452; 3 Dessaussure, 168.

Courts of equity look to the substance, and not to the forms of these transactions; and regard husband and wife as distinct persons, when they have, as respects each other, distinct property interests. 19 Vermont, 410; 24 ib., 375.

The books are full of illustrations of the doctrine that there may be direct dealings between husband and wife.

A deed from the husband to the wife is valid, as between the parties, and good as to strangers, if resting on a valuable consideration and honest motive. 28 Miss. Rep., 717; 24 Miss. Rep., 181; 25 Ib. Rep., 160.

The husband for value and *bona fide* endorsed and delivered a negotiable note to the wife, she took the paper with the rights of any other endorsee. 38 Maine, 68.

If the note be payable to the wife, her endorsement (the husband assenting), passed the title. 10 Cush., 291.

Authorities are abundant, that post-nuptial settlements are good where a valuable consideration existed—such as a *bona fide* indebtment to the wife, or where her property has been appropriated by the husband. 161 Vesey, 146; 6 John Ch. Rep., 57.

A voluntary settlement made by a husband not indebted at the time, was good as against subsequent creditors. 8 Wheat., 220.

There is no doubt that the relation of debtor and creditor may subsist substantially between the husband and wife. It would not be brought in question by the learned counsel for the defendants in error, that Mrs. Simmons might well have brought her bill in chancery against her husband, and had proper relief, taking all the matters set up in her declaration. True, she ought to sue by her next friend, but

she would be the only party in interest, nor would it be doubted, that if the facts warranted it, a pecuniary decree *in personam*, might go against the husband to be enforced like this judgment, by ordinary *fieri facias.* The relief rests on the equity, that the husband by the transactions had with his wife, touching her separate property, has become her debtor. The law is inadequate on account of its system of pleading and practice to give this relief. Technically the wife is *sub potestate viri*, and has no separate adversary status in its courts against the husband. But the "right" of the wifes' *subsists*, and the subject at last is reduced to this —that she has applied to the wrong forum to assert her right. But can this objection be made against Mrs. Simmons in this case? The defendants in error, are not parties *or privies* to the judgment of Mrs. Simmons. It does not bind or effect them, except that it is a debt of record, with all the incidents and advantages of a judgment, and the record is conclusive evidence against them, that it is a "judgment." In that respect it proves itself, and is unimpeachable. If it had been placed on record by plea, that Mrs. Simmons was under coverture, her suit would have abated. Lord Bacon says: "A man shall never assign for error, that which he might have pleaded in abatement, for it shall be accounted his folly to neglect the time for taking that exception." At common law, personal disabilities become subjects of judicial cognizance only as connected with some right or duty, which by reason of the disability, such as coverture, infancy, etc., the party is incapable to assert. The mode of availing of it varies, as the party under disability is plaintiff or defendant.

The disability always implies a right, but an inability to assert it. If the defendant neglects by plea in abatement, to object the coverture of the plaintiff, but demurs, or pleads in bar, he must be taken to have waived it, and can not avail of it on writ of error. Lyman, admr v. Albe, admr., 7 Vermont, 509. If the abateable matter occurred after plea to the merits, it may be set up in a plea *puis darrien continuance*, if interposed at the earliest moment according to the course

and practice of the court. But if the disability be to the writ, or the person of the plaintiff, and it existed at the time the defendant appeared and pleaded to the merits, he will thereby waive all benefit of such disability, and is estopped from procuring it, or in any form taking advantage of it. Wilson v. Hamilton, 4 Serg. & Rawl., 238. But these defendants in error, may say that not being parties to the suit, they had no opportunity to set up the coverture of Mrs. Simmons. Neither can they be heard in a collateral suit like this, to put forward exceptions to the proceedings in her suit, which were not made by the defendant.

In late years there has been a great enlargement of the property rights and interests of married women, in this and many of the other states.

The scope of this legislation has been to secure to her the *corpus* of the property which she brought into the marriage, or subsequently acquired, and also to give to her the income and revenues of her separate estate, free from the right, use of, or disposition on the part of the husband.

In Pennsylvania, where this sort of legislation exists, she has been permitted to sue in her own name, in respect of her separate estate. Goodyear v. Rambaugh, 13 Penn., 481.

The Illinois statute of 1861, embraces the same provisions, in effect, as respects the separate property of married women, as arts. 23 and 24 of the Code, p. 335 and 336. Perhaps the Illinois statute in discribing the "interest" of the wife, may be a little broader than ours.

In the case of Emerson v. Clayton, 32 Illinois R., 496, the wife in her own name brought replevin for chattels, her separate property, her coverture was pleaded in abatement. The plea was held bad, on the ground that the entire interest in the property was in her. There was no necessity to "join her husband in an action to recover it, or for trespasses upon it."

Under a somewhat similar statute in Pennsylvania, in the case of Goodyear v. Rambaugh, 13 Penn., 481, the right of wife to sue without joining the husband, was also recognized.

Samuel Shade confessed a judgment in favor of his wife Elizabeth Shade, for $600. Under judgment, the land of Samuel Shade was sold and proceeds brought into court for distribution. After paying prior liens, the wife would be entitled to $74 in her judgment, if valid. The law of that state, securing the separate property interests of the wife, and the judgment not being assailed for fraud, the residue of the money was ordered to be paid over on it.

Subsequent to this, in the supreme court of the same state, occurred the case of Moore's appeal, 47 Penn. Rep., 308.

Jesse Moore, the husband, confessed judgment in favor of his wife. The points arose on motion to distribute money.

The court say: "Here is a judgment given by husband to secure the wife's separate estate. We are asked on a mere question of distribution, to pronounce it void, upon the legal fiction that they are one person in law."

After reviewing the departures which had been made from this "legal unity," by the courts of equity, in giving full effect to the separate property interests of the wife, which it fostered and protected, the court adds: "Here we have a judgment, regular on its face; Moore, the defendant, was *sui juris*, capable of giving it, while the marriage is a fact, *de hors* the record." Then what is there in the legal discretion of the court to enquire into the validity of the judgment? If marriage is suggested—there being no fraud alleged—the answer is, the law protects her estate, and equity sustains the instrument which represents it; and why should the court lend its aid to overturn the judgment?

The summary of the judgment is: The estate, both in *corpus* and income is preserved to the wife. The claim which, in this case, was merged into judgment, is due and owing, so far as the record shows. Equitably, it ought to be paid. We do not feel at liberty—in a collateral controversy of this sort, to hold the judgment void. To do so, would be reactionary to the spirit and scope of modern legislation in the interest of married women.

The case last cited, if accepted as authority, fully sustains

this view. The defendant in error, Thomas, could have shown, if the facts would have maintained it on the hearing of the motion, that the judgment in favor of Mrs. Simmons " was had, made, or contrived of malice, fraud, covin, collusion, or guile, to the intent to delay, hinder, or defraud creditors of their just rights," etc., etc.; but there was no issue of this sort made.

If the judgment had been successfully assailed on these grounds, then the judgment would have been utterly void.

Let the judgment of the circuit court be reversed, and judgment rendered in this court, that the money be applied to the judgment in favor of Mrs. Simmons.