HATTIE MAY, PLAINTIFF IN ERROR, V. JOHN MAY, DEFENDANT IN ERROR.

**Husband and Wife:** THEIR POWERS TO CONTRACT ONE WITH THE OTHER: THEIR RIGHT TO SUE IN THE COURTS OF THIS STATE FOR THE ENFORCEMENT OF SUCH CONTRACT. J. M. and H. M. are husband and wife and living together in that relation. J. M. made and delivered his promissory note for value in the sum of $1,000, to one K., who endorsed and delivered the same for value to H. M. The said J. M. also made and delivered for value his other promissory note to H. M. for $728.81. Both of said notes were made and delivered and suit brought thereon by H. M. against J. M. while they were married and living together as husband and wife. *Held,* That the said notes were valid and binding contracts in the hands of H. M. against J. M.; that suit was properly brought thereon by her in her own name, and that the demurrer of the said H. M. to the answer of J. M. in the district court, setting up the marriage of the parties in the nature of a plea in abatement, should have been sustained.

THIS was an action brought by Hattie May in the district court for Richardson county upon two promissory notes executed by John May, the first for $1,000 to one Kooken, and by him assigned to the plaintiff, and the second for $728.81 directly to the plaintiff. Plaintiff and defendant were husband and wife, and the notes sued on were made and delivered and suit brought thereon while they occupied that relation. The defense set up in the answer was that said plaintiff, Hattie, was the wife of said defendant, John, and to this answer a demurrer was filed, and, upon argument before WEAVER, J., overruled. Plaintiff excepted and brought the cause to this court by petition in error.

*Schoenheit & Thomas,* for plaintiff in error.

The common law rule has been changed by statute, in Nebraska. With us a marriage does not operate as

a gift to the husband of the wife's property, and he is not responsible for her debts contracted before the marriage.  After marriage she continues to own her property and she may sue and be sued in the same manner as if she were not married.  All of.the reasons of the common law rules having ceased to exist, the rules themselves are no longer operative.  Gen. Stat., 465.  Laws 1875, 88.  Laws 1877, 33.  *Webster v. Webster*, 58 Maine, 139.  *Going v. Orns*, 8 Kan., 85.  *Faddis v. Woolomes*, 10 Kan., 56.  *Jones v. Jones*, 19 Iowa, 236. *Logan v. Hill*, Id., 491.  *Butler v. Butler*, 8 Cent. Law Jour., 295.  *Wilson v. Wilson*, 36 Cal., 447.  *Simmons v. Thomas*, 43 Miss., 31.  *Wright v. Wright*, 54 New York, 437.  Pomeroy on Remedies, sec. 240.  See also *Albee v. Cole*, 39 Vermont, 319.  *Huber v. Huber*, 10 Ohio, 371.

*J. D. Gilman*, for defendant in error.

At common law husband and wife could not enter into contracts between themselves, and had no capacity to sue each other at law, and were regarded as one person.  This we claim is still the law in this state, notwithstanding the statute enlarging the right of the wife.  The rights of the wife are enlarged only as to third parties, and the relationship between husband and wife is not affected or disturbed.  *Aultman, Taylor & Co. v. Obermeyer*, 6 Neb., 261.  *Fowler v. Trebein*, 16 Ohio State, 493.  *Wallingsford v. Allen*, 10 Peters, 583. Reeves Domestic Relations, 89.  *Jackson v. Parke*, 10 Cush., 550.  Plaintiff must seek her remedy in a court of equity.  *Lamaster v. Scofield*, 5 Neb., 148.  *Turner v. Althaus*, 6 Neb., 54.  It must appear from the record that the notes sued upon were the sole and separate property of plaintiff before marriage, or come to her from the rents or profits of such property, or from some

4

other source except her husband.    This must be shown
by the record before she could sue, even with such
construction.    This does not appear, and so far as the
record discloses, she has no separate property, and did
not have at the time of the marriage.    *Davis v. First
National Bank of Cheyenne*, 5 Neb., 242.    Perry on
Trusts, sec. 32.

Cobb, J.

Although there is but one practical question pre-
sented by the record in this case, yet it will perhaps
be found more convenient, for the purpose of its proper
consideration, to divide it into two at the outset.

*First.* Does the making and delivery of a promissory
note by a married man to his wife for a valuable con-
sideration constitute a valid and binding contract?

*Second.* Can a married woman while living with her
husband maintain an action against him on a promis-
sory note made and delivered by him to her since the
marriage?

It will be readily conceded that unless we find au-
thority for an affirmative answer to these questions in
our statutes they must both be answered in the nega-
tive.    The sections of our statute applicable to the first
branch of our inquiry are as follows:

SECTION 1.    The property, real and personal, which
any woman in this state may own at the time of her
marriage, and the rents, issues, profits, or proceeds
thereof, and any real, personal, or mixed property
which shall come to her by descent, devise, or bequest,
or the gift of any person except her husband, or she
shall acquire by purchase or otherwise, shall remain
her sole and separate property, notwithstanding her
marriage, and not be subject to the disposal of her
husband or liable for his debts.    [Laws 1875, p. 88.]

SEC. 2. A married woman, while the marriage relation exists, may bargain, sell, and convey her real and personal property, and enter into any contract in reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property.

SEC. 3. A woman may, while married, sue and be sued in the same manner as if she were unmarried.

SEC. 4. Any married woman may carry on trade or business and perform any labor or service on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services shall be her sole and separate property, and may be used and invested by her in her own name. [Gen. Stat., 465.]

This statute defining the rights of married women contains but one allusion to, or exception of, her husband. Property, the gift of her husband, may not remain her sole and separate property, not subject to the disposal of her husband or liable for his debts. In respect to property acquired by her in any other manner than by gift from him, the husband stands in the same relation to her as all the rest of the world. In the grant of general power (if I may use the language) to her to "bargain, sell, and convey her real and personal property, and enter into any contract in reference to it," to "sue and be sued," to "carry on trade or business and perform any labor or service on her sole and separate account," and to use and invest her earnings in her own name, contracts with her husband are not excepted.

The provisions of the statute of Maine on this subject are as follows:

"SECTION 1. A married woman of any age may own in her own right real and personal estate acquired by descent, gift, or purchase; and may manage, sell, convey, and devise the same by will, without the

joinder or assent of her husband; but real estate directly or indirectly conveyed to her by her husband, or paid for by him, or given or devised to her by his relatives, cannot be conveyed by her without the joinder of her husband in such conveyance; except real estate conveyed to her as security or in payment of a *bona fide* debt actually due from her to her husband. When payment was paid for property conveyed to her from the property of .her husband, or it was conveyed by him to her without a valuable consideration made therefor, it may be taken as the property of her husband to pay his debts contracted before such purchase."

"SEC. 2. A woman having property is not deprived of any part of it by her marriage, since the act approved March 22, 1844, was in force; and a husband by marriage, since that time, acquires no right to any property of his wife. * * A married woman may release to her husband the right to control her property, or any part of it, and to dispose of the income thereof for their mutual benefit, and may in writing revoke the same."

"SEC. 3. She may receive the wages of her personable labor not performed for her own family, maintain action therefor in her own name, and hold them in her own right against her husband or any other person." Revised Statutes of Maine, 1871, p. 491.

Under this statute the case of *Webster v. Webster*, 58 Maine, 139, was commenced and decided. That was an action on a note made and delivered by the defendant to the plaintiff Jan. 22, 1861 (the above statute being then in force), and they being then married (at the date of the note) and living together as husband and wife. At the October term, 1869, they were divorced *a vinculo*. Afterwards she brought the suit on the said note, and had judgment at the superior court. On error to the supreme court it was held, that while for

purely technical reasons she could not have maintained the suit until after the divorce or the termination of the marriage relation in some other way, yet that the giving of the note created a valid contract between the parties, and that the defense of marriage (which was urged and relied upon by plaintiff in error) was purely technical. It continues only while that relation continues, and ceases with its termination. The judgment was affirmed.

The statute of Kansas in relation to the rights of married women is identical with our own. Under its provisions the supreme court of that state has held, in a case where a married woman living with her husband bought a horse from him and paid him for it out of her separate money—how or when acquired by her is not stated—which horse was soon afterwards levied upon by a constable by virtue of an execution against the husband, that she could maintain replevin against the constable for the horse. Thus necessarily holding that the husband and wife, while living together in that relation, were competent to make legal and binding contracts with each other, so as to pass the title of property *ex vi termini*. *Going v. Orns*, 8 Kansas, 85, which case has been followed by later cases in that state.

In the state of Iowa, under a statute somewhat different from ours, though not different in principle, it was held in a case where, during the marriage relation, the husband borrowed money from his wife and gave her his note for it, that the same was a valid and binding contract, and that he being deceased she could maintain suit thereon against his administrator. *Logan v. Hall*, 19 Iowa, 491.

As long ago as 1841 it was held by the supreme court of Ohio that a note given by a husband to his wife for a loan of money by her to him, out of a dower interest received by her from the estate of a former

husband, created a legal obligation which—the maker of the note having deceased—would be enforced against his administrator. *Huber v. Huber's Administrator*, 10 Ohio, 371, which case was followed in 1857 in *Wood v. Warden*, 20 Ohio, 518.

In none of the above mentioned states has the legislature passed any act which in terms changes the common law in regard to the nature and character of the marriage relation or the unity of the persons of husband and wife, and the above cases must of necessity have gone upon the theory that the statutes of the said states respectively defining the rights of women in the marriage relation in respect to the ownership, control, and disposition of property, have in effect done away with the technical unity of husband and wife as formerly existing at common law. At least such is my opinion. So that when our statute says that "a married woman, while the marriage relation exists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may," etc., it means that she may sell the same to, or contract with reference to the same with, anybody who is generally competent to contract, and that the other contracting party will be bound by such contract regardless of whatever relations may exist between them.

I come, therefore, to the conclusion that the plaintiff in error was competent to receive the said note set forth in the first cause of action set out in the petition from the said Josiah Kooken, and the same constitutes a legal cause of action in her hands against the defendant in error. Also that the note made and delivered by the defendant in error to the plaintiff in error, as set forth in the second cause of action in the said petition, is a legal and binding contract between the parties.

We then come to the final and perhaps most important question, can the plaintiff in error maintain this action against the defendant in error in the district court while they are living together as husband and wife?

I have been able to find but one adjudicated case exactly in point— *Wilson v. Wilson*, 36 .Cal., 447. In this case, in 1856, the defendant, William Wilson, executed two notes in favor of the plaintiff, Orpha Wilson, one ·for one thousand dollars and one for thirteen hundred dollars, each payable five years from date. In 1857, before the maturity of the notes, plaintiff and defendant intermarried and were living together as husband and wife at the time of the bringing of the suit. Defendant.demurred, relying upon two grounds, *

* * secondly, that the facts do not constitute a cause of action in favor of the wife against the husband. The district court sustained the demurrer, and rendered judgment for defendant. On error to the supreme court the judgment of the district court was reversed. In the opinion of the court, C. J. Sawyer says: "The present policy of the law is to recognize the separate legal and civil existence of the wife, and separate rights of property, and the very recognition by the law of such separate existence and rights at law, as well as in equity, to hold and enjoy separate property, involves a necessity for opening the doors of the judicial tribunals to her in order that the rights guaranteed to her may be protected and enforced."

In the state of New York the commission of appeals some four years ago considered and decided a. case quite in point so far as the power of the wife to maintain an action against the husband is concerned. But in that case the note was given before marriage and in consideration of a promise to marry;-and the parties had separated before the suit was brought. In the

opinion the commission, by Reynolds, C., say: "The plaintiff therefore has a valid obligation against the defendant, which in some form, either at law or in equity, or in both, she can enforce in the courts. The supreme court in which the action was tried has 'general jurisdiction both in law and equity,' and it had jurisdiction of the persons of both parties to this controversy, and could give judgment according to the very right of the case regardless of form, and in furtherance of the ends of justice might amend pleadings, conform pleadings to facts proved, etc. While it is admitted that the rights of the plaintiff could be enforced by suit in equity, yet it is insisted that this being an action at law it cannot be maintained by a married woman against her husband. It might be asked by what authority the defendant names this an action at law? What additional allegation in the complaint would have enabled the defendant to designate it as a suit in equity? * * Certainly the defendant has been deprived of no legal right, and if the form of the pleadings was not agreeable to him it was very easy to have them made to conform to the facts proved by a proper application. If the complaint was not full enough to disclose the case in all its features, it was competent for the defendant to spread the facts out in his answer by way of affirmative defense or otherwise, for all that has any bearing upon the rights of the parties grew out of one and the same transaction. While regard is still to be had in the application of legal or equitable principles, there is not of necessity any difference in the mere form of procedure so far as the case to be stated in the complaint is concerned. All that is needful is to state the facts sufficient to show that the plaintiff is entitled to the relief demanded, and it is the duty of the court to afford the relief without stopping to speculate upon the name to be given to the action."

But need we look further than to our own statutes for authority upon which to decide this case? Our code provides that: "A woman may while married sue and be sued in the same manner as if she were unmarried." Gen. Stat., 528, Sec. 31. This capacity to sue is not limited, and no person or class of persons is excepted from its effect. If she were unmarried there could be no doubt that she could sue this same man. This statute (as I understand it) plainly provides that she can do the same thing though married to him.

In the fore part of this opinion, I have endeavored to show by authorities that by the receipt and ownership of the two notes in question, the plaintiff in error had two legal and valid causes of action against the defendant. These obligations he fails to pay. It therefore becomes necessary that an action be brought against him to enforce payment.

These notes are her separate property, which we have seen, under the provisions of the statute, "may be used and invested in her own name." But how is she to use or invest the money represented by these choses in action unless she can collect it by suit? Even under the old system of practice, and before the beneficent legislation defining the rights of married women hereinbefore quoted, this could have been done by resorting to the circuity of proceeding in the name of a trustee and a court of equity. But now, not only is the administration of law and equity vested in the one court, but all forms of procedure which heretofore distinguished legal and equitable suits are abolished, and the need of the intervention of a trustee is done away with by the statute which provides that "every action must be prosecuted in the name of the real party in interest." Gen. Stat., 528.

The conclusion is therefore irresistible that the action

at bar was properly brought, and that the district court erred in overruling the demurrer to the answer.

The judgment of the district court is therefore reversed, and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.