# WHEELING.

## MAXWELL & ISHAM v. HANSHAW.

Submitted June 17, 1884—Decided July 5, 1884.

1. A transfer of property either directly or indirectly by an insolvent husband to his wife during coverture is justly regarded with suspicion; and unless it clearly appears that it was entirely free from any wrong intent or purpose to withdraw the property from the husband's creditors it will not be sustained. (p. 410.)

2. In such transfers there is a presumption against the wife in favor of the husband's creditors which she must overcome by affirmative proof. (p. 410.)

3. A case in which it is held, that an alleged loan of money by a wife to her insolvent husband was, under the circumstances, a gift and not a loan as against the creditors of the husband.

The facts of the case are stated in the opinion of the Court.

*John Bassel* and *S. P. McCormick* for appellant.

*Martin & Woods* and *J. W. Mason* for appellee.

SNYDER, JUDGE:

Charles F. and Robert M. Hanshaw, partners as Hanshaw & Bro., on February 12, 1881, made their two due bills of that date, the one to Mattie J. Hanshaw, the wife of said Charles F. for two thousand and fifty-eight dollars and the other to Marion W. Hanshaw, the wife of said Robert M. for two thousand four hundred and forty-one dollars and fifty six cents. On the same day the due bills were assigned by said Mattie and Marion, respectively, to David T. Percy, and at once the said Charles and Robert confessed in the clerk's office of the circuit court of Taylor county a judgment to said Percy for four thousand four hundred and ninety-nine dollars and fifty-six cents, the amount of said two due bills. By deed dated February 14, 1881, said Charles and Robert and their wives conveyed to M. H. Dent, trustee, all the property, real and personal, owned by them individually and as partners to secure first the payment of said judgment to Percy and one or two other debts and then to pay ratably all other debts due from said Charles and Robert. On April 2, 1881, the trustee sold the real estate thus conveyed to him under the provisions of said trust-deed and Percy became the purchaser thereof at the price of two thousand nine hundred and ninety-six dollars, which sum was credited by him on the judgment confessed in his favor as aforesaid and he directed the trustee to convey said real estate to said Mattie J. and Marion W. Hanshaw, and this seems to have been done by the trustee.

At the time these transactions occurred the said Hanshaw & Bro. were carrying on business as retail merchants in the town of Grafton, Taylor county, where they had been so doing since 1870, and they were then utterly insolvent and

in failing circumstances—their indebtedness in addition to the sums alleged to be due their wives exceeding ten thousand dollars, and their property and effects worth less than half that sum.

In August, 1881, Maxwell & Isham and W. & T. Allen, creditors of Hanshaw & Bro. filed their bill in the circuit court of Taylor against said Hanshaws, their wives and many of their creditors, stating the above and other facts and alleging that said due bills were without any real or valuable consideration and made with intent to hinder, delay and defraud the creditors of Hanshaw & Bro. and therefore void as to the debts of the plaintiffs, and other creditors; that said Percy gave nothing for said due bills, but that his name was used merely for the purpose of effecting the scheme of said Hanshaws to defraud their creditors by withdrawing their property from the reach of creditors and transferring it to their wives. The bill prays that said due bills and judgments to Percy and so much of said trust-deed as pretends to secure said judgment may be declared void and the proceeds of said real estate applied to the payment of the plaintiffs and other creditors secured in said trust-deed, &c.

The defendants Chas. F. and Robt. M. Hanshaw and their respective wives answered the bill denying that said due bills were without a valuable consideration or made for the purpose of defrauding any one; but averring that they were given for money loaned to Hanshaw & Bro. by the said Mattie and Marion W. Hanshaw which they owned as their separate estates and no part of it was derived by either from her husband. Depositions were taken and the cause having been matured for hearing, the court on November 15, 1882, entered a decree dismissing the plaintiffs' bill with costs, and from this decree the plaintiffs have appealed.

The appellants insist that the alleged debts for which the due bills were given are fictitious and fraudulent as against them and that, therefore, the circuit court erred in refusing so to decide. Whether the court erred or not is more a question of fact than of law. But three depositions were taken, two of them were those of the defendants, Mattie J. and Marion W. Hanshaw, and the third was that of William McClaskey, the father of said Mattie, and all were taken on

behalf of the defendants. The substance of the testimony of these witnesses is as follows:

William McClaskey deposes, that he is the father of the defendant, Mattie, and father-in-law of Charles F. Hanshaw; that prior to 1870, he and said Charles had been partners in merchandizing and on a settlement of their transactions said Charles was found indebted to him nine hundred and forty-five dollars and seventy-five cents, and that in the summer or fall of that year he advanced said indebtedness and five hundred dollars in cash to his daughter, the said Mattie.

Mattie J. Hanshaw deposes, that she was married to Charles F. Hanshaw in December, 1865; that her father, in October, 1870, advanced to her one thousand four hundred and forty-five dollars and some cents; that Hanshaw & Bro. had the use of it, but that she never had any note for it until the due bill of February 12, 1881, was given; that no part of this money has ever been paid to her. On cross-examination she says, that she gave the money to Charles F. Hanshaw; that the money was given to her *in cash* by her father, that nine hundred dollars and over was given at one time and directly afterwards five hundred dollars; that in June, 1874, Hanshaw & Bro. gave a trust-deed on all their property to secure their creditors, in which deed she united, but that the debt now claimed by her was not secured in that deed; that she requested her husband several times to have the debt secured, but does not know why it was not embraced in that deed; that Percy had given her a written obligation to pay her for the due bill, and that she holds a deed for the property sold by Dent, trustee, in which she lives and two other houses and lots, which were conveyed to her in part satisfaction of said due bill, and that said property was bid in at the trustee's sale for her.

Marión W. Hanshaw deposes, that, she was married to Robt. M. Hanshaw in February, 1870; that her father died some years before her marriage and since her marriage she has received from her father's estate money as follows: April 9, 1870, two hundred and seventy-five dollars; October 20, 1870, one hundred dollars; December 10, 1870, six hundred and fifty dollars and forty-three cents; September 10, 1874, two hundred dollars and April 9, 1875, three hun-

dred and sixty-four dollars; that she loaned this money to
Hanshaw & Bro. and no part of it has been repaid to her.
On cross-examination she says that she made the first loan
April 9, 1870; that she passed the money to Robt. M. Han-
shaw; that the other loans were made at the times she
received the money and in each case she gave the money to
her husband and never took any note or writing for any of it
until the due bill of February 12, 1881, was made to her;
that she knew Hanshaw & Bro. in 1874 executed an assign-
ment to secure their creditors in which she united, and that
said money was not secured in said deed; that she does not
know just exactly what steps she took at that time to recover
her loans, but found out that her money would not be lost
and that was all that was necessary—she depended on her
attorney; that for the two hundred dollars loaned Septem-
ber 10, 1874, she has a note signed by Hanshaw & Bro.;
that David T. Percy at the time she transfered the due bill to
him obligated himself to collect the money and pay it to her.

The foregoing is the substance of the testimony in support
of the ·alleged debts in favor of the defendants, Mattie J. and
Marion W. Hanshaw, and it seems to me to be plainly insuf-
ficient to establish said debts against the rights of the appel-
lants and other creditors of Hanshaw & Bro. There is no
direct testimony that the money was in either case loaned to
the firm of Hanshaw & Bro. The same was in both in-
stances handed by the wife to her husband and not to the
firm. No bond or note was taken for any part of it, except
for two hundred dollars loaned in 1874 and even this note if
it ever existed is not offered in evidence. The first time that
these large debts are ever heard of outside of the family, or
in it, so far as the record shows, was more than ten years
after the greater part of it had been loaned as now claimed,
and at a time when the said firm was hopelessly insolvent
and on the verge of failing. It is then that these large debts
emerge from the seclusion of the family, and most re-
markable proceedings are taken to secure them against
the assaults of creditors. In the first place the firm,
composed of the husbands, execute to the respective wives
of its members due bills for the alleged debts, the
wives then assign these due bills without consideration

to a third party, the husbands immediately confess judgment to this third party; two days after they execute a trust-deed on their property to another person as trustee and provide therein not only that this claim shall be paid out of the real estate so conveyed as a preferred debt, but that all creditors named in said deed who should not accept, within ninety days, such sums as might be paid to them as non-preferred creditors and release the husbands from all liability for their debts, should be denied all right to participate in the proceeds of the sale of the property. And further the trustee with great promptness sells all the real estate and it is purchased for the wives for but little more than half the alleged debts and then the said real estate is conveyed to the wives. Thus in a very brief time by suspiciously circuitous and remarkable proceedings the whole of the real estate of the husbands is transferred to and the title vested in their wives to the entire exclusion of the creditors of these insolvent husbands. It seems to me the mere statement of this transaction is sufficient to condemn it. Transfers of property, either directly or indirectly, by an insolvent husband to his wife, during coverture, are justly regarded with suspicion, and unless it clearly appears that they were entirely free from any wrong intent or purpose to withdraw the property from the husband's creditors they will not be sustained. There is in such cases a presumption against the wife in favor of the creditors which she must overcome by affirmative proof— *Herzog* v. *Weiler, supra* 199.

Assuming that the wives in this case did furnish the money as stated by them, it is a fair presumption from their testimony and the other facts that the money was a gift by each wife to her husband and not a loan to the firm. It is fair to conclude from all the circumstances that the suggestion of a loan never occurred to the wives or the husbands until insolvency overtook them and some plausible device became necessary to shield the property from the pursuit of creditors. The facts tending to show that the pretended loans were in reality gifts are much stronger in this case than they were in *McGinnis* v. *Curry,* 13 W. Va. 29, and yet this Court held the transaction to be a gift in the latter case.

If there was in fact any loan to the firm, it is very strange

that the husbands, the members of the firm, did not become witnesses to prove it.   They were competent witnesses in behalf of their wives at the time the decree complained of was entered, and it seems quite improbable that they would fail to testify if their testimony was considered favorable to the pretensions of their wives.   They were presumably better acquainted with business transactions and must have known as much, if not more, about what actually occurred than their wives.   But be this as it may, the fact that they did not testify is strong evidence that they could not do so truthfully in favor of the claims of their wives.   This with the other facts and circumstances in the case satisfy my mind that the appellees, Mattie J. and Marion W. Hanshaw have not made out their right to be paid the debts for which said due bills of February 12, 1881, were given as against the just debts of the appellants and other creditors of their husbands.

The decree of the circuit court must, therefore, be reversed with costs to the appellants and this cause remanded to said court with directions to require David T. Percy to account for the proceeds of the sale of the real estate purchased by him at the sale of M. H. Dent, trustee, under the deed of February 14, 1881, or that said real estate shall be re-sold, and in either event the proceeds shall be applied to the payment of the debts of said Hanshaw & Bro., (to the exclusion of the said claims of Mattie J. and Marion W. Hanshaw, or the judgment in favor of said Percy,) in such manner and to such creditors as may be entitled thereto according to law and equity.

REVERSED.   REMANDED.