# CHARLESTON.

BENNETT *v.* BENNETT, *et al.*

BISHOP *v.* LINDSEY.

Submitted September 17, 1892.—Decided December 22, 1892.

1. HUSBAND AND WIFE—CONFESSION OF JUDGMENT—SEPARATE ESTATE—FRAUD.

A judgment confessed by a husband in favor of his wife, free from fraud, for a just debt due from him to her on account of her separate estate, will not be held void in a court of equity at the instance of his creditors, but will be a lien on his land. If fraudulent it is void as to them. (p. 398.)

2. HUSBAND AND WIFE—SEPARATE ESTATE—PRESUMPTION.

If a wife deliver or allow her husband to receive money of hers belonging to her separate estate, the presumption is that it is a gift, not a loan, and she must establish by clear proof that it was a loan, with promise of repayment, at the time of the transaction, especially as against his creditors. (p. 401.)

3. DEPOSITIONS—ADJOURNMENT.

An adjournment in taking depositions from one time to another must specify the date to which the adjournment is. An adjournment from 19th March, 1890, "until 15th ——, 1890," is bad. Depositions taken 15th May, 1890, the adverse party not appearing, can not be read over his exception. (p. 405.)

4. HUSBAND AND WIFE.

Suits at law by wives against husbands.

5. EVIDENCE—ADMISSIBILITY.

Evidence of a witness giving contents of a private entry in a book by a person deceased, of payments of money to his children, neither the book nor a copy of the entry being produced, nor the book verified, is not admissible to show such payment, even if the book itself would be evidence. (p. 404.)

6. EVIDENCE.

A writing signed by distributees of a dead man, stating that they had severally received from him certain sums of money, is not competent evidence to prove that fact against strangers. (p. 405.)

J. H. WOODS, for appellants cited How. Part. §§ 9, 10; 10 W. Va. 171; 27 W. Va. 759; 4 H. & M. 1; 5 Rand. 126, p't 1, Syll.; 17 Gratt. 187, p't 10, Syll.; 1 Greenl. Ev. §§ 117,

118; 30 W. Va. 248, p't 4, Syll.; 32 .W. Va. 203; Code, c. 74, s. 1; 31 W. Va. 16; 11 W. Va. 217; 26 W. Va. 225; Code, c. 129, s. 4; 13 W. Va. 440, p't 10, Syll.

DAYTON & DAYTON, for appellee cited 32 W. Va. 566; Id. 203; Id. 447; Code, c. 125, s. 33; 34 W. Va. 442; Code, c. 130, s. 35; 27 W. Va. 510, 436; 33 Gratt. 730; 18 W. Va. 694; 28 W. Va. 415; Code, c. 130, s. 23; 34 W. Va. 442; 35 W. Va. 634; 14 S. E. Rep. 59; 1 Bl. Judgmts § 56; Id. 211; 106 Ill. 36; 47 Pa. St. 307; 33 Gratt. 351; 29 W. Va. 385; 13 W. Va. 572; 15 W. Va. 829; 19 W. Va. 366; 27 W. Va. 759; 27 W. Va. 220; 20 W. Va. 272; 22 W. Va. 581; 24 W. Va. 525; 20 W. Va. 244.

BRANNON, JUDGE :

On April 19, 1889, R. C. Bennett confessed a judgment in favor of Maggie Bennett, then his wife, and she brought a chancery suit in Barbour county against R. C. Bennett and others, alleging the said judgment, and that it was based on borrowed money belonging to her separate estate, for which R. C. Bennett had executed to her his obligations, and that said judgment was a lien on R. C. Bennett's land; and praying that it be enforced against the same.

J. A. Bishop and William T. Bishop, who were made defendants as judgment-creditors, answered the bill, demurring to it, and claiming that, as the judgment, had been confessed while the parties to it were husband and wife, it was void, and not a lien on the land of R. C. Bennett; alleging that if Mrs. Bennett had received money from her father's estate, and her husband had used it, he gave her no obligations at the time for it, and they used their funds in common; that he purchased the land with his own means, or, if with her means, she had given it, without any written evidence of debt for it, and had no such evidence until any claim by her was barred by limitation; and that said judgment was confessed to hinder, delay, and defraud them and other creditors of R. C. Bennett.

Said J. A. Bishop, a judgment-creditor of R. C. Bennett, brought an independent suit of his own to enforce his judgment, and in his bill assailed said confessed judgment as void in law and intended to defraud creditors.

The two causes were heard together, resulting in a decree adjudging the said judgment void, but according to Mrs. Bennett a lien from the institution of her suit, decreeing several liens against R. C. Bennett's land, giving priority to the debt of Mrs. Bennett, and subjecting the land to sale. From this decree J. A. Bishop and William T. Bishop appeal to this court.

The first question I shall discuss is whether a judgment confessed by a husband in favor of his wife is valid. It is contended that as a wife can not sue a husband at law, can not contract with him, or sue him at law upon his obligation, the judgment must be to all intents void. Our statute (chapter 66 of the Code) allows a married woman to hold and enjoy property as her separate estate free from the power of her husband, and from that fact it might be thought she could sue him to effectuate and vindicate her separate property right—sue him as well as any one else; and especially so as section 15 gives her the right to sue alone "where the action or suit" concerns her separate property, or is between her and her husband, using the words "action or suit," referring both to actions at law and suits in equity, seeming to be an unlimited grant of capacity to sue her husband.

In several states, where similar statutes prevail, she is allowed to contract with her husband and sue him. *Scott* v. *Scott*, 13 Ind. 225; *Wilkins* v. *Miller*, 9 Ind. 100; *May* v. *May*, 9 Neb. 16 (2 N. W. Rep. 221); *Wright* v. *Wright*, 54 N. Y. 437; *Wilson* v. *Wilson*, 36 Cal. 447; *Hall* v. *Hall*, 52 Tex. 294.

The tendency of decisions seems to be that way. How can she obtain a lien for her just debt on her husband's land? Others can obtain judgment-liens before justices which may absorb his estate, leaving her without relief. From cases which I noticed in examining other matters I incline to think that under our statutes she could maintain ejectment or detinue against her husband to recover real or personal property, *Crater* v. *Crater*, 118 Ind. 521 (21 N. E. Rep. 290); *Wood* v. *Wood*, 83 N. Y. 575; *Minier* v. *Minier*, 4 Lans. 421; *Emerson* v. *Clayton*, 32 Ill. 493; *Martin* v. *Robinson*, 65 Ill. 129; *McKindry* v. *McKindry* (18 Atl. Rep. 1078); 6 Lawy. Rep. Ann. 506 and note.

In *Alexander* v. *Alexander*, 85 Va. 353 (7 S. E. Rep. 335) the opinion supports the right to sue the husband at law because of the married woman's act. But the common-law prevails with us, and under it a wife can not contract with her husband; and chapter 66 of the Code, giving her right to hold separate property, has not given her capacity to contract at law, or to contract with her husband. *Pickens* v. *Kniseley*, 36 W. Va. 794 (15 S. E. Rep. 997). She can not sue her husband at law, because she can not contract with him at law. *Roseberry* v. *Roseberry*, 27 W. Va. 759.

But here is a confessed judgment. Is it good? The question is not between the husband and wife; it is not whether he could plead the invalidity of the judgment, but whether strangers to the judgment, creditors of the debtor, can allege its invalidity. In Arkansas, where the statute is the same as ours, judgment confessed by the husband in his wife's favor was held void because of the unity of the husband and wife; but there the husband attacked the judgment. But in *Simmons* v. *Thomas*, 43 Miss. 31, while it was held that, where a husband owes a wife, the proper forum for the enforcement of the indebtedness is chancery, yet if he confessed a judgment, it was valid and could be assailed only for crime, malice or fraud against creditors. It was a contest between judgment-creditors, and the wife was given the preference under her judgment.

In *Williams's Appeal*, 47 Pa. St. 307, it was held that a judgment admitted to be unobjectionable in point of honesty, given by a husband to secure his wife her separate estate, in a question of distribution, will not be void in law or equity because of the legal unity of the parties. The relation not appearing in the record, the court will not, at the instance of the creditors, inquire into the fact of coverture when no fraud is alleged.

In *Rose* v. *Latshaw*, 99 Pa. St. 238, and *Lahr's Appeal*, Id. 507, it was likewise held. I am aware that law and equity are in Pennsylvania administered in the same action, but the principle is stated generally.

1 Black, Judgm. § 56, says: "The indebtedness of the husband to his wife, by note or for money or property, is a

sufficient consideration to support a judgment confessed by him in the wife's favor as against his other creditors, when not impeached for fraud; and such a judgment, admitted to be honest, will not be treated as void in law or equity because of the legal unity of the parties, and, the relation not appearing in the record, the court will not, at the instance of creditors, inquire into the fact of coverture, when no fraud is alleged." He cites *Thomas* v. *Mueller*, 106 Ill. 36, and *Williams' Appeal*, 47 Pa. St. 307, which I find to support his text, though in Illinois a statute authorizes such suit.

Therefore I think a confessed judgment by husband in favor of wife can not be attacked by strangers simply because it is between husband and wife, based on a contract between them. The only question which creditors can ask is: Was there an honest debt due from husband to wife for her separate estate? If so, she has the same right as they. He can prefer her as well as any other creditor. If it is a just debt, a court of equity, which fully recognizes that a husband may be debtor to his wife, will not split hairs as to the form of the indebtedness. Will such court allow strangers to say, that she shall not have the priority of the judgment on account of the form of the preference because of the technical principle of common-law which does not permit a wife to sue a husband, when they would recognize a deed of trust or mortgage? I think not.

The husband may plead the coverture, but why should strangers be allowed to do so? *Roseberry* v. *Roseberry, supra*, only holds that she can not sue him at law, and he can plead the coverture, but does not decide that his confessed judgment would be void. He is *sui juris*, and competent to waive his exemption from suit by her. If he were to execute a deed of trust to her for a just debt such deed would be good. Though courts of law regard contracts between husband and wife creating a debt utterly void, yet courts of equity give force and effect to them and will enforce a loan by wife to husband out of her separate estate. 2 Story, Eq. Jur. § 1372; *Medsker* v. *Bonebrake*, 108 U. S. 66 (2 Sup. Ct. Rep. 351); *Bank* v. *Tavener*, 130 Mass. 407, and cases cited; *Hanson* v. *Manley*, 72 Iowa, 48 (33 N. W. Rep. 357); cases

cited in opinion in *Bank* v. *Atkinson*, 32 W. Va. 210 (9 S.
E. Rep. 175); *Simmons* v. *Thomas*, 43 Miss. 31; 1 Bish.
Mar. Wom. § 360; Schouler, Husb. & Wife, § 395; *Jaycox*
v. *Caldwell*, 51 N. Y. 395; *Whitford* v. *Daggett*, 84 Ill. 144.

Equity has jurisdiction of suits by a wife to enforce her
debt against her husband. Would not a confessed decree
be a lien on his land? Why should not a judgment? He
has waived exception to the jurisdiction. But creditors may
assail such judgment, just as they may assail a transfer of
property from husband to wife. They can show that it is
not founded on her separate estate, or that, if the husband
in fact received her separate estate, it created no debt, or
that the whole transaction was intended to defraud them.
They so assault this judgment.

While a *bona fide* loan by a wife to her husband out of
her separate estate will be valid in equity, yet it must be a
loan, an indebtedness by express promise of repayment
made at the time of the loan; for when he receives her
money no implied promise of repayment, legal or equita-
ble, arises, as would be the case were they not husband and
wife, but the law in such case presumes she intended a gift.
*McGinnis* v. *Curry*, 13 W. Va. 29 ; *Bank* v. *Atkinson*, 32 W.
Va. 203 (9 S. E. Rep. 175); *Zinn* v. *Law*, 32 W. Va. 447 (9
S. E. Rep. 871); *Maxwell* v. *Hanshaw*, 24 W. Va. 405 ;
*Beecher* v. *Wilson*, 84 Va. 813 (6 S. E. Rep. 209); *Sewing-
Machine Co.* v. *Radcliff*, 63 Md. 496 ; *Jacobs* v. *Hesler*, 113
Mass. 157 ; *McClure* v. *Lancaster*, 58 Am. Rep. 259.

Where there is no promise of repayment she can not re-
cover, even from his estate. *Reed* v. *Reed*, 135 Ill. 482 (25
N. E. Rep. 1095.)

"Where her land is turned into money and she does not
place her part of the money with some indifferent person
for her as her separate estate, but suffers the whole to be
paid to the husband, the clearest proof is requisite to rebut
the presumption that it was paid to and accepted by the
husband for himself." *Temple* v. *Williams*, 4 Ired. Eq. 39.

A mere general understanding that the money so receiv-
ed by him belonged to his wife, and that he considered him-
self accountable to her for the same, is not sufficient to es-
tablish the relation of debtor and creditor between husband

and wife.   To establish a debt in favor of the wife against
creditors of the husband it must appear that it was receiv-
ed by the husband under an agreement to repay it to her,
or to invest it for her use.   If, without such agreement to
pay or invest, he invests it in business, and afterwards exe-
cutes a voluntary bill of sale to secure her, it will be fraud-
ulent in law against existing creditors.   *Kuhn* v. *Stansfield,*
28 Md. 210.   Without such promise of repayment she can
not afterwards set up a claim upon the footing of a credi-
tor, as she is taken to have acquiesced in such appropria-
tion of the money for the common benefit of herself and
husband or the benefit of the family.   *Sewing-Machine Co.*
v. *Radcliff, supra;  Hanson* v. *Manly,* 72 Iowa, 48 (33 N. W.
Rep. 357); *Bank* v. *Atkinson, supra.*

There is a presumption of law that a postnuptial settle-
ment in favor of a wife is void as to existing creditors.
*Robbins* v. *Armstrong,* 84 Va. 810 (6 S. E. Rep. 130); *Beecher*
v. *Wilson,* 84 Va. 813 (6 S. E. Rep. 209); *DeFarges* v. *Ry-
land,* 87 Va. 404 (12 S. E. Rep. 805).

"If money which a married woman might have secured
to her own use is allowed to go into business of the husband,
be mixed with his property, and applied to the purchase of
real estate for his advantage, or for the purpose of giving
him credit in business, and is thus used for a series of years,
such real estate, unless there is, at the time of its purchase,
a specific agreement that it shall belong to the wife, be-
comes the property of the husband for the purpose of pay-
ing his debts.   A conveyance thereof to his wife upon the
occurrence of his bankruptcy is a fraud upon his creditors,
and void."   *Humes* v. *Scruggs,* 94 U. S. 22.

In New Jersey it was held that where the wife knows
that her money is invested in land in the husband's name,
even with the design to create a trust for her, and on his
apparent ownership he obtains business credit, equity will
not protect it from the husband's creditors ; and this for the
reason, as the court said, that she knew the lands were in
his name, and that he was engaged in business involving
hazard, and was credited because of such ownership, and
would incur debts in business; and this state of things ex-
isting until the hour of disaster came, it would be against

plain justice to permit her then to step in and withdraw from creditors the very property she had permitted him, year after year, to represent to be his, and the apparent ownership of which had given him credit and standing. *Besson* v. *Eveland*, 26 N. J. Eq. 468.

When a husband, with wife's knowledge, collects wife's money, and, without her objection, uses it for ten years, obtaining credit on faith of it, the wife can not afterwards assert her claim against creditors. *Bank* v. *Norwood*, 50 Ark. 42 (7 S. E. Rep. 323). In *Lahr's Appeal, supra,* the Pennsylvania court, while recognizing a confessed judgment in favor of the wife, said that, "for prevention of fraud clear and satisfactory proof of a wife's claim against her husband is exacted in a degree not required of others."

Having these principles of law before us, let us refer to the facts, to see whether the judgment will stand or fall before the onslaugh of creditors. The claim is that Mrs. Bennett received from her father four thousand four hundred and twenty six dollars in his lifetime, and from his administrator one thousand two hundred and fifty three dollars and eighty five cents. Her pleadings say that she lent her husband all this large amount of money, so as to justify a confession of judgment by him of six thousand two hundred and eighty dollars and seventy two cents. Her answer says that he bought the shares of certain Dolton heirs in land with this money, and the impression which one would derive from the answer is that it was all applied in that way; but only two thousand four hundred and ninety three dollars of it went there. There is no appearance of where the balance went. She claims that he was to buy the land in her name, but that he took deeds in his own name, and she lent him money to pay the purchase-money deferred. If that was the only application of her money, she lent him no sum equal to the confession of judgment for six thousand two hundred and eighty dollars and seventy two cents. Where went the balance? But if she did let him have all this money, it must have gone into his own business ventures or pleasures.

The theory that she intended the money to go into the land as a gift to her husband, not as an investment for her,

is furthered by the fact that he put nine hundred dollars of his own means into the land, and by the fact that he took deeds to himself, and she, knowing this furnished him money to pay for the land, and allowed the land to stand in his name for years. If the land were bought for her, the natural inference would be that the deeds would have been taken in her name. Were she asserting a claim to the land in kind, she would be met by the legal principle above stated, that she allowed the title thus to be taken and remain for years, the husband appearing as owner to the world, getting credit on the faith of his ownership, and her claim not asserted until he becomes involved. She does not claim the land, however, but seeks to set up a loan.

The law presumes that it was a gift—that she let him have it, not as a debt, but for their common benefit; and she must overthrow this presumption by proving that a loan was intended and made, a promise of repayment, not a mere general understanding that, as it was her money, she was to be repaid, but a contract to repay.

Now, he acquired some interests in the land in February, 1880, the payments falling due in April, 1880 and 1881; one interest paid for in December, 1882, another in March, 1884, others in February, 1884. That no loan was intended at the time when the land was acquired is likely, because Mrs. Bennett's answer says the land had been bought for her, and while the husband insisted on taking the deeds in his name, she lent him money to pay for the land on the trust that he was to convey to her the land. Was it a loan and trust for the land in kind at the same time? Hardly. If it was a purchase of land to be conveyed by him to her, that would repel the idea of a loan.

The answer alleges that Mrs. Bennett received from her father money as above stated. She must show it to be her separate estate. The evidence does not do so. The administrator says that her father's book charges her with four thousand four hundred and twenty six dollars advancement. The book is not produced or verified, nor a copy from it. It is merely the witness's own opinion or inference of its contents, and may be a correct or incorrect construction of its contents. 1 Greenl. Ev. §§ 117, 118; *Vinal*

*v. Gilman*, 21 W. Va. 301. It is merely a private entry, and it would not be good evidence against creditors. *Fox* v. *Railroad Co.*, 34 W. Va. opinion p. 474 (12 S. E. Rep. 757).

An agreement between his various heirs, showing they had received various sums from their father made after his death, including Mrs. B., is filed; but it is *res inter alios acta*, not evidence against creditors. Mrs. Bennett's own unsworn statements can not thus go in evidence in her behalf against strangers to the paper. Only original evidence can be allowed as to this matter. Mrs. B. and others making this statement are living, and their mere statement is not admissible. 1 Greenl. Ev. § 147. A recital in a deed would not be evidence to prove a fact to prejudice strangers to it. Starkie, Ev. 83, 84, 85, says these principles are based on the clearest principles of justice, and are sacred. Whart. Ev. §§ 173, 175.

Thus there is no evidence that she had this separate estate, except what was paid by the administrator, which must have been received after the land was acquired. Did he get that? A general replication denies this matter of her answer. Neither is there evidence that she made a loan to her husband, with promise of repayment. True, the answer states that he made obligations to her, and the mere fact of their execution would be taken for true; but what were they given for? They are not exhibited with the bill. Their dates are not given in her bill, or in her answer in the other suit. If they were given, probably their dates would not be taken as truly stated. How easy for them to put any date to notes. No witness ever saw these obligations or attests the loan. The marriage relation, in times of pecuniary disaster, affords so strong an incentive to wrong creditors, and so much opportunity for so doing, and it is so hard for creditors to seek out and prove fraud, that the law demands clear evidence to enable a wife to set up a debt against her husband as to creditors; and business safety requires us to adhere firmly to these principles.

We exclude from consideration the depositions of Maggie Bennett and others, taken before Justice SIMMONS, because, the taking having been opened, it was adjourned from 19th March "until the 15th ——, A. D. 1890," no date

being fixed, and the depositions were taken not even in the next month, but in May, the adverse party not appearing. Timely exceptions were made to the depositions, which were overruled, while we think they should have been sustained, and the depositions suppressed. *Hunter* v. *Fulcher,* 5 Rand. (Va.) 126.

But I am free to say that, were these depositions considered, they would not change the result. Much of their evidence is incompetent. The evidence of the wife intrinsically does not strengthen her case ; and were the evidence of the husband and wife the only evidence bearing on the alleged loan and notes, it would be inadequate, for this Court held in *Zinn* v. *Law,* 32 W. Va. 448 (9 S. E. Rep. 871) that "when the facts and circumstances tend to show that a gift was intended, and that the husband used and dealt with the property as his own, the mere parol testimony of the husband and wife of a private understanding between themselves, that the transaction was by them considered or intended as a loan, will not, as against creditors of an insolvent husband, rebut the presumption of a gift." The wife's evidence was held insufficient in *DeFarges* v. *Ryland,* 87 Va. 404 (12 S. E. Rep. 805).

This debt being a means by which it is sought to withdraw property from creditors, the rule often announced by this Court applies, that in transactions between husband and wife it requires less proof to impeach the act, and more and stricter proof to repel impeachment than between strangers, and, unless it be shown to be free from fraud, it will not be sustained. *Herzog* v. *Weiler,* 24 W. Va. 199 ; *Maxwell* v. *Hanshaw,* Id. 405 ; *Burt* v. *Timmons,* 29 W. Va. 441 (2 S. E. Rep. 780). The judgment falls under the ban of section 1, c. 74, Code, as a judgment obtained with intent to defraud creditors.

The decree is reversed, and the cause remanded, in order that another decree may be entered which shall disallow the debt of Mrs. Bennett so far as creditors of her husband are concerned, but which shall allow it subordinately to their debts.

REVERSED. REMANDED.