# WHEELING.

## ZINN v. LAW.

*(GREEN, JUDGE, absent.)

Submitted June 18, 1889.—Decided June 24, 1889.

1. HUSBAND AND WIFE—GIFTS.

   Where a wife delivers money or property of her own to her husband, which he uses in his business, the presumption is, that such delivery was intended as a gift; and in order to constitute such delivery a loan as against the creditors of the husband, the wife must prove an express promise of the husband to repay, or establish by the circumstances, that it was a loan, and not a gift.

*On account of illness.

| 32 | 447 |
| 37 | 384 |
| 37 | 401 |
| 32 | 447 |
| 38 | 753 |
| 32 | 447 |
| 41 | 392 |
| 32 | 447 |
| 52 | 52 |
| 32 | 447 |
| 56 | 347 |
| 57 | 487 |
| 32 | 447 |
| f62 | 485 |
| 32 | 447 |
| 65 | 678 |

2. Husband and Wife—Gifts.

When the facts and circumstances tend to show, that a gift was intended, and that the husband used and dealt with the property as his own, the mere parol testimony of the husband and wife of a private understanding between themselves, that the transaction was by them considered or intended as a loan to the husband by the wife and not a gift, will not as against the creditors of an insolvent husband rebut the presumption of a gift.

*T. E. Davis* for appellant.

*Schilling & Pendleton* for appellee.

Snyder, President:

Suit in equity brought in September, 1886, in the Circuit Court of Calhoun county by Thomas G. Zinn against L. F. Law and Nancy E. Law, his wife, to subject a tract of 148 acres of land in said county to the payment of a judgment for $252.68, recovered by him in said court at its June term, 1886, against the defendant, L. F. Law.

The bill avers, that the debt upon which said judgment was recovered, was contracted by said Law in March, 1882, and that at that time said Law was the owner of a steam saw-mill, engine and fixtures, and that he continued to own and operate said saw-mill, until about the time the plaintiff instituted his action at law on said debt; and that the said Law for the purpose of hindering and defrauding the plaintiff entered into a written agreement with one Mary Hays, dated November 23, 1885, by which he traded said saw-mill to said Hays for the said 148 acres of land, and $600.00 in lumber and money, binding said Hays therein to convey said land to his wife, the defendant Nancy E. Law; that subsequently by deed dated December, 1885, said land was conveyed to said Nancy. The bill then avers, that said conveyance was voluntary as to the said Nancy and made for the purpose of hindering, delaying and defrauding the plaintiff and other creditors of the said Law, and prays, that said land may be held liable for and sold to pay the plaintiff's said judgment *etc.*

The defendant Nancy E. Law, by her answer denies, that said conveyance to her was either fraudulent or voluntary, but on the contrary avers, that she is the *bona fide* owner

thereof and paid a valuable consideration therefor; and then proceeding to state the consideration and the manner, in which she acquired the land, says, that she became the wife of L. F. Law in the year 1868, and that they have lived together as man and wife ever since; that in the year 1879 she received from her father, Henry Steinbeck, $500.00; that in 1881 she received from her father-in-law, Andrew Law, $100.00; and that prior to that time she received from her uncle, Christian Steinbeck, $400.00; that about the year 1880 her husband under an agreement with her purchased of one Rollins a steam saw-mill, engine *etc.*, at the price of $1,100.00, upon which Thomas E. Davis had a lien for about $800.00, which her husband agreed to pay, and the other $300.00 of the purchase-money was furnished by her upon an agreement with her husband, that the said saw-mill should be her property; that soon after the purchase of the said saw-mill she furnished to her husband the further sum of $200.00, which was the residue of the money she had gotten from her father in 1879, to be used in making repairs on said mill; that in the year 1879 her husband bought on credit from one Ireland an interest in a grist-mill, which he traded to one Leggett for a tract of land; that with her consent her husband traded said land to Thomas E. Davis in payment of the lien held by him on the said saw-mill, and the money due to Ireland for said land was paid in sawing and work done at the saw-mill for Ireland and others; that said sawmill, engine *etc.* were entirely paid for with her separate means and the increase from its investment, and no part of the purchase-money was paid with the money or means of her husband; that after this saw-mill had been thus paid for by her, it was traded for another saw-mill, and $200.00 boot paid with her means; that in 1882 this last-named sawmill was removed from Ritchie to Calhoun county, where in November, 1885, it was traded by her husband as her agent for the tract of 148 acres of land in controversy, and said land was conveyed to her as her separate estate; that by an oral agreement she made her husband her agent to handle and invest her money in all the aforesaid trades; and that he did not either directly or indirectly furnish any part of the means, which was paid for said land, save his own ser-

vices in making said trades and operating said saw-mills, but that the same was paid for by her own separate means derived as aforesaid from her father, uncle and father-in-law, and the proceeds of its investment. She further avers, that the said 148 acres of land have been sold for taxes, and that the title is vested in the State. The answer of the husband adopts and virtually reiterates the answer of his wife.

The cause was on June 16, 1887, heard upon the pleadings, exhibits and depositions, and a decree was then pronounced by the court dismissing the bill, and from that decree the plaintiff has appealed.

The only testimony filed by the defendants is their own depositions, in which they substantially testify to the facts set forth in their answer as above given. All the depositions are in a narrative form, and none of the witnesses were interrogated or cross-examined; but each was left free to frame his or her own statement without interference.

The plantiff, besides his own' filed the depositions of two witnesses, viz., Thomas E. Davis and George M. Ireland. The plaintiff testifies, that he knows, that L. F. Law, the husband, bought the saw-mill and did a good deal of sawing and did the business in his own name and never mentioned his wife's name in any of his business transactions; that he claimed the mill as his own; and also that Law told witness, that he had traded the mill for the land and had the deed made to his wife, and thus got his business in such a shape, that witness could not make anything out of him.

Davis testifies, that in the year of 1880 he sold to L. F. Law a saw-mill, engine *etc.*, in this way : One Rollins was indebted to witness for said mill, and Law purchased it from Rollins, and witness took Law's notes for what was due on the mill; that Law had purchased an interest in a grist-mill, which he traded to Leggett for about forty acres of land, and Law arranged with Leggett to have said land conveyed to witness to pay off Law's notes for said saw-mill; that in this way Law paid for said saw-mill, and the wife of Law was not mentioned in the transaction.

Ireland testifies, that he sold to L. F. Law an interest in a grist-mill, for which he made Law a deed retaining a lien on the property for the purchase-money; that some

time thereafter Law informed witness, that he had traded this interest in the grist-mill to Leggett for a small tract of land and desired him to release the lien on the grist-mill and take a lien on the saw-mill, which Law had bought from Davis, and that witness did release said lien, and in lieu thereof Law give him a lien on the saw-mill; that Law afterwards paid off the lien on the saw-mill in money and sawing and a note on one Atha for $91.00, except $200.00 which is still unpaid; and this witness also testifies that the wife of Law had nothing to do with any of these transactions.

The foregoing is substantially all the testimony in this cause. In addition to this evidence the plaintiff relies upon the following facts to show, that the conveyance of the 148 acres of land to the wife of Law was intended to defraud the plaintiff and other creditors of L. F. Law: *First*, in the deed for the land to the wife a lien is retained to secure "the peaceable and undisturbed possession of said mill-property against any incumbrances of any kind by judgment-liens or otherwise," *second*, the written agreement for the exchange of the saw-mill for the land shows, that, as it was originally prepared, the wife of Law was not named as one of the contracting parties, but that afterwards her name was interlined; and, *third*, the claim of the wife in her answer, that the land had been sold for taxes. These facts, it is claimed, show the conduct of the parties to be so unusual and precautionary as to indicate a fraudulent purpose.

But, without giving any undue importance to these matters, it seems to me, that the Circuit Court erred in dismissing the plaintiff's bill. It is not denied as a general proposition, that, if a clearly valid, subsisting debt is established by a wife against her husband, he may pay it or prefer it in the conveyance of his property. But, where a husband becomes insolvent, the wife can not convert into debts, as against his creditors, former deliveries of her money or other property to him or permitted receipts by him of her income or proceeds of her separate estate, which at the time of such delivery or receipt were simply gifts intended by the wife to assist her husband in his business or to pay their common expenses of living; and considering the relation between

them the law does not, merely from such delivery or receipt, imply a promise on the part of the husband to repay or replace the same, as it would between parties not so related; but it requires more,—there must be either an express promise or circumstances attending the transaction to establish the fact, that they dealt with each other as debtor and creditor.

It would be exceedingly dangerous to permit the wife, after she has allowed her husband to use and expend her means for the common benefit of themselves and their children without any expectation of any return or the creation of a debt, when by mismanagement or misfortune of the husband he becomes unable to pay his debts, to raise up these gifts and convert them into loans to the prejudice of creditors, and support them by her own evidence, after the creditors had trusted the husband in total ignorance of any such liability. In transactions between husband and wife, which are impeached as fraudulent, it requires less proof to sustain the impeachment, and more and stricter proof to repel it, than would be required if the transaction were between strangers. A transfer of property either directly or indirectly by an insolvent husband to his wife is justly regarded with suspicion; and, unless it is clearly shown to be entirely free from an intent to withdraw the property from the husband's creditors, or the presumption of fraud be overcome by satisfactory affirmative proof, it will not be sustained. The foregoing principles are fully sustained by many decisions of this Court in cases, in which they were rigidly enforced. *McGinnis* v. *Curry*, 13 W. Va. 29; *Herzog* v. *Weiler*, 24 W. Va. 199; *Maxwell* v. *Hanshaw*, Id. 405; *Burt* v. *Timmons*, 29 W. Va. 441, (2 S. E. Rep. 780); *Bank* v. *Atkinson*, *ante*, 175.

Assuming that the wife, Mrs. Law, acquired from her father, uncle and father-in-law the money, as she claims in her answer and deposition, and that it was delivered to her husband and used by him in such manner, that the proceeds or a part thereof entered into the purchase of the land in controversy, the evidence wholly fails to prove, that the money was hers after it passed into the hands of her husband. In the absence of an express contract or circum-

stances, the legal presumption is, that the delivery of the money to her husband was a gift, and, as she has entirely failed to rebut this presumption, we must hold, that such delivery was a gift. There is no pretence of any express promise by the husband to repay the money. It is true the wife says, that by an oral agreement she made her husband her agent, and that the money was furnished to him with the understanding, that the mill was to be her property when purchased. But all the circumstances repel this claim. The husband purchased the first mill before she furnished him any money. He made all the subsequent trades and did all the business in his own name. He claimed the mill as his own, gave a lien upon it to secure his own debt, paid that debt from his own labor and the profits of the mill. In none of these transactions was his wife mentioned, nor did she in any respect make her claim known to any one dealing with her husband. It is entirely fair to conclude from all the facts and circumstances, that the suggestion of a loan or investment of the wife's money for her separate use never occurred to either the wife or the husband until insolvency overtook the husband, and some plausible device became necessary to shield the property from the pursuit of creditors.

I am therefore of opinion, that the said 148 acres of land is liable for the plaintiff's judgment, and that the decree of the Circuit Court must be reversed, and the cause remanded for further proceedings in accordance with the principles announced in this opinion.

REVERSED—REMANDED.