# CHARLESTON.

COLEMAN *et al. v.* PARRAN *et al.*

Submitted September 3, 1897—Decided Nov. 13, 1897.

1. RESULTING TRUST—*Express Trust—Declaration of Parties.*
   A resulting trust being a mere creature of equity, it cannot therefore arise where there is an express trust declared by the parties, and evidenced by a written declaration of such express trust. (p. 752.)

2. TRUSTS—*Express Trust.*
    Where a trust is express, implications are thereby excluded.   (p. 755.)

Appeal from Circuit Court, Hardy County.

Bill by R. L. Coleman, Emma P. Coleman, and William S. Parran agaist Nina A. Parran and others, in equity, for partition and sale of land.   Plaintiffs had a decree and the defendants, J. C. Parran and W. V. D. Parran appeal.

*Affirmed.*

R. W. MONROE and J. T. HOHN, for appellants.

H. S. CARR, BENJ. DAILEY, and M. W. GAMBLE, for appellees.

MCWHORTER, JUDGE :

At December rules, 1891, R. L. Coleman, Emma P. Coleman, and William S. Parran filed their bill in equity in the Circuit Court of Hardy County, against Nina A. Parran, widow; D. T. Parsons, W. V. D. Parsons, John C. Parran, Martha Barbee, and Samuel Barbee, defendants, alleging that the said parties plaintiffs and defendants are the heirs at law and widow of N. D. Parran, who, in 188–, died seised and possessed in fee simple of several valuable tracts of land, situate in said Hardy County, on or near the South fork of the South branch of the Potomac, consisting of three hundred and ten and one-half acres conveyed by John Stump to said N. D. Parran, by deed dated August 31, 1852, and the same tract on which N. D. Parran resided at the time of his death, which deed from Stump to Parran is exhibited with the bill; also, a tract of seventy and three-fourth acres, which was assigned to said N. D. Parran in the chancery cause of *Custer Bryan* v. *Godfrey See and others*, which said assignment is of record in said Hardy County Court clerk's office, and a copy thereof exhibited with the bill; also, a tract of two acres adjoining the seventy and three-fourth-acre tract, conveyed to said Parran by Charles Lobb, special commissioner, by deed dated on the 27th of April, 1875, recorded in said office, and a copy thereof exhibited with the bill; also, a tract of fifty-eight acres, lying on Middle Mountain, but plaintiffs, not being able to find deed for same, could not locate the

tract; alleging that said real estate is not susceptible of partition, but that it would be greatly to the advantage of all the heirs to have it sold, and the proceeds divided among those entitled to it; and praying that said land be decreed to be sold, and after assigning to Nina A. Parran, the widow, her dower therein, the proceeds be distributed to the parties entitled thereto, and for general relief. The widow, Nina A. Parran, answered the bill, setting up her rights as widow, agreeing to the sale of the lands, and to accept a gross sum of the proceeds in lieu of dower, and averring that a part of said lands are agricultural lands, and should be rented out under an order of the court until such time as an advantageous sale could be made.

The defendants John C. Parran and D. T. Parsons and W. V. D. Parsons, his wife, filed their joint answer, in the nature of a cross bill, admitting the death of N. D. Parran; that at the time of his death he was in possession of and occupying the several tracts of land mentioned in the bill, and sought to be partitioned, but denying that decedent owned it in fee; averring that respondents John C. Parran and W. V. D. Parsons (formerly Parran) were the only children of said N. D. Parran, deceased, and his wife, Adaline Louisa (*nee* Craigen); that their mother was the daughter of John Craigen, who departed this life in the latter part of the year 1826, leaving a will, which was probated in Hardy county on the the 9th of January, 1827, and exhibited a copy thereof; that John Craigen devised his home place and four tracts of woodland to said Adaline Craigen, afterwards Parran (said respondent's mother), for and during her natural life, and after her death to the issue of her body, and in default of any issue, then to the rest of her heirs; but Mary Ann Craigen, the wife of John Craigen, and executrix under the will, had a life estate in said lands; that at the time their father married their mother, which was about the year 1836, he was entirely without means; that all the money and property acquired by him was the result of the profits accruing from the real estate devised to their mother and grandmother as aforesaid, and from the sale of a large part thereof, and charging and averring that the seven thousand dollars paid for the three hundred and ten and one-half acres of land conveyed to

said N. D. Parran by John Stump, and on which Parran resided at the time of his death, was the money and separate estate of their mother, Adaline, and their grandmother, Mary Ann Craigen, derived from the sale of her maiden lands and other property, and was paid for in the lifetime of said Mary Ann Craigen, and that the same was true as regards the other lands mentioned in plaintiff's' bill; that when the said Stump farm, of three hundred and ten and one-half acres, was purchased, the deed for same was made to N. D. Parran, instead of to the said Adaline Parran and Mary Ann Craigen, without the latter's knowledge and consent, and, when they learned how the deed had been drawn, they called the said N. D. Parran's attention to the fact, and asked that the said deed be corrected, or something done to show that said land belonged to them, and, at the death of her said husband, should become the property of respondents; that said N. D. Parran, recognizing the justice of said claim, at once assented to it, and drew up, or had drawn up, a proper paper writing, duly signed by him, wherein he acknowledged the real ownership of said land to be in their mother, and provided that, upon his death, the said John C. Parran and W. V. D. Parran (now Parsons) should be the owners of said land, and that this is equally true of the other lands mentioned in the bill; that, while the deeds were made to N. D. Parran, the money of respondent's mother and grandmother, derived from the sale of other lands and other property, was used in paying for them, and proper paper writings were signed by the said N. D. Parran as to these lands also, showing that upon his death they should be owned by respondents; that they had seen these paper writings, but were not then able to file them with their answer, as they had not yet been able to fully examine the papers left at his home by their father when he died, but would as soon as practicable make such examination and file such papers if they could be found, and, if they could not be found, they would ask leave of the court to prove their contents by oral testimony, which they could easily do to the satisfaction of the court; and averred that, by reason of the matters and things alleged in said answer, the said Parran only held said lands in trust for them during his life; and that at his death they became sole equitable owners

thereof, and that they still own the same; and praying that no further action should be taken by the court in this cause until the questions raised by the said answer should be inquired into and adjusted, and for general relief.

To which answer and cross bill plaintiffs R. L. Coleman, Emma P. Coleman, William S. Parran, and the defenants Nina A. Parran, widow of N. D. Parran, deceased, Martha Barbee and Samuel Barbee, filed their demurrer (which was overruled) and special replication, wherein they traverse every material allegation of the answer, denying that the seven thousand dollars, or any part thereof, paid for the three hundred and ten and one-half acres, the Stump land conveyed to N. D. Parran by deed of August 31, 1852, was the money and separate estate of Adaline, wife of N. D. Parran, derived from the sale of her maiden lands and other property, or that any part of said purchase money was paid out of the money or funds of Mary Ann Craigen, or that the other lands in the bill mentioned were purchased by the said N. D. Parran with the money and separate estate of the said Adaline Parran, derived from the sale of her maiden lands and other property, or that the Stump land and other lands mentioned in said bill, or any portion thereof, were purchased or paid for with the money of the said Mary Ann Craigen, or paid for in the lifetime of said Mary Ann Craigen; and averring that all the said lands, except the Stump land, were purchased by said N. D. Parran after the death of said Mary Ann Craigen, and that the purchase money for the Stump land, with the exception of the cash payment of three thousand dollars, was paid after the death of said Mary Ann Craigen; further, that the said real estate in the bill mentioned was purchased of said Stump by said N. D. Parran with his own money, and that the deed for said real estate was made to him, and that said real estate was held and owned by him in fee simple; and denying that said Adaline Parran and Mary Ann Craigen called the attention of said Parran to the fact that the deed was made to him, or that they asked that the deed should be corrected, or something done to show that said real estate belonged to them, and at the death of Adaline's said husband should become the property of said John C. Parran and W. V. D. Parsons; and denying that any such claim as is asserted in

the cross bill was made by Adaline Parran and Mary Ann Craigen, or either of them, or that such claim was recognized or assented to by said N. D. Parran; and denying that the said Parran drew up or had drawn up any proper paper writing, or any writing, duly signed by him, wherein he acknowledged the real ownership of said real estate to be in said Adaline Parran, and providing that, upon his death, the said John C. Parran and W. V. D. Parsons should be the owners of said lands; and denying that the other lands mentioned in the bill were purchased by Parran with the money of Adaline and Mary derived from the sale of her land and other property; and denying that proper paper writings were signed by said Parran as to these lands showing that at his death said lands should be owned by said Parran and Parsons, and that no such paper writing or writings ever existed; and utterly denying that any such writing or writings were ever seen by said John C. Parran and W. V. D. Parsons, or either of them; and denying that the said N. D. Parran only held said real estate in trust for the said John C. Parran and Parsons during his life, and that at his death they became the sole equitable owners thereof, and still own the same; and averring that all of said real estate in the bill mentioned was purchased by said Parran with his own money, and held by him in fee simple, and was not held by him in trust for Parran and Parsons, or for anybody else; and denying that said N. D. Parran, at the time he married Adaline Craigen, was utterly without means; and further denying that said N. D. Parran ever held said real estate, or any part of it, in trust, as alleged in the cross bill; but averring that, on the contrary, he purchased said real estate with his own funds, and the same was conveyed to him in fee simple, as shown by the deeds filed in the cause; further averring that said real estate was always held, owned, and claimed by N. D. Parran in fee simple; that he time and again offered to sell said real estate, and, in order to effect the sale of the same, placed it in the hands of other parties or agents, to sell at specified prices, for the sale of which said Parran was to pay the parties making the sale a commission; averring that on the 7th of September, 1887, he executed a deed of trust to Benjamin Dailey, trustee, conveying all his real estate in the bill mentioned, and, in ad-

dition thereto, a tract of about seven thousand acres, to secure a debt of three thousand dollars, a copy of which deed of trust is filed as an exhibit; that by deed dated the 14th day of December, 1889, N. D. Parran and wife conveyed to I. H. C. Pancake, for the sum of four thousand dollars, a tract known as the seven thousand acre tract, described in the deed as six thousand seven hundred and sixty-eight acres, and exhibited a copy of the deed; further averring that there was a suit pending in the circuit court of Hardy County concerning the said sale of land by Parran and wife to Pancake for several years, in which John C. Parran took a lively interest on behalf of the parties who instituted the suit against his father, but no claim or right whatever was set up or asserted by said John C. Parran and W. V. D. Parsons, although all the facts were then as much in their knowledge as now, and their father, N. D. Parran, was then living and vigorously defending said suit, and was sustained by the courts in his defense in said suit, and that said W. V. D. Parsons was fully aware of the sale of said lands to said Pancakes, and the pendency of said suit; and further averring that said Adaline Parran, the mother of said John C. Parran and W. V. D. Parsons, died on the —— day of ——, 1872; that on the 19th day of April, 1876, the said N. D. Parran conveyed to the said John C. Parran and W. V. D. Parsons all his right as tenant by curtesy in all the lands of their mother, the said Adaline Parran; that said deed was acknowledged on the —— day of ——, and was accepted by the parties and admitted to record on the 12th day of March, 1888, and on the 27th day of March, 1888, was examined and delivered to said John C. Parran, and averring that if, at the time of the execution of the last mentioned deed, John C. Parran and W. V. D. Parsons had any claim or right whatever to any lands held by said N. D. Parran that was the time to have asserted, or to have obtained some recognition of, their claims; but that their claim that they were the owners of said real estate mentioned in the bill, and that said lands were held in trust by the said N. D. Parran for them, was not made at that time, and was never made or heard of until several years after the death of N. D. Parran, and one year after the institution of this suit, and exhibited a

copy of said deeds of N. D. Parran to John C. Parran and W. V. D. Parsons; that said Parran and Parsons held what is known as the "Craigen Home Place" under said conveyance from the said N. D. Parran from the date of said deed up to the time of said Parran's death, and partitioned said place between themselves after said deed was made to them; further averring that the will of John Craigen set forth in said cross bill does not correctly present the title to the lands in said will set forth and devised, in this: that the said John Craigen did not have title to all of said home place and four tracts of woodland devised by said will to Adaline Craigen for life; that George See, by his will, a copy of which is filed with this answer, devised to John Craigen and Mary, his wife, one-half of the plantation upon which he resided, upon the conditions set forth in said will; that he gave to his daughter Phœbe Couchman the upper half of said place, to be equally divided between her and John Craighen, and, if she died without heirs of her body, the said half should be divided between John Craigen and Adam See; that the said Phœbe Couchman died without issue of her body, thus giving the upper half of the place to John Craigen and Adam See; that there is nothing in this cause to show that John Craigen and his wife purchased Adam See's interest in said place; and denying that said Craigen and his wife purchased said interest of said Adam See, which interest was one-fourth of said place; that, if said Craigen and his wife purchased Adam See's interest in said place under the provisions of George See's will, Mrs. Craigen would have been entitled to one-eighth of said place under said purchase, and to one-fourth under the will of George See, which would have made her interest in the place three-eighths.

Respondents, further answering, said that said N. D. Parran purchased said real estate in the bill mentioned for his own use and benefit, and denied that any arrangement, agreement, or understanding was made, before or after the purchase of any of the said real estate by him, either with the said Mary A. Craigen or his wife, that the said real estate, or any part of it, was purchased or held by him in trust for them, or either of them, or for the said John C. Parran and W. V. D. Parsons, or for any one

else; and, while denying that said N. D. Parran pur-
chased said real estate from the proceeds of sale of the
land or property of his wife, the said Adaline Parran, or
with the money or property of Mary Ann Craigen, sub-
mitting that he had the right to receive the rents and
profits of the land of his said wife, and to reduce her per-
sonal property into possession, and to make such use and
investment thereof as he might desire or deem proper
under the then-existing laws of the State of Virginia, and
that even if the said N. D. Parran had received any money
from Mary Ann Craigen, which is denied, that it would
only have created a personal liability upon him, which
could only have been enforced in a court of law, and which
cannot at this time be continued into a trust; and claim-
ing that the fact that said Stump land was purchased by
the said Parran in 1852; that said Mary Ann Craigen died
in 1853, leaving a will; that said Adaline Parran died in
1872 or 1873; and that N. D. Parran died in 1890; and
that the said claim that the said Parran held the land in
the bill mentioned in trust for the said John C. Parran
and W. V. D. Parsons was never made or set up until the
said cross bill was filed,—justifies the respondents in say-
ing that the said claim of said trust is a stale claim, and
is of such a character that a court of equity will not en-
force it; and praying that the relief asked for in the
original bill may be granted, and for general relief.

The will of George See provides for Mary Ann Craigen,
his daughter, who was the mother of Adaline Louise Par-
ran, as follows: "I give and bequeath unto my son-in-
law, John Craigen, and his wife, Mary, and heirs, one-half
of the plantation whereon I live, and adjoining Harness'
land, and all the advantages arising therefrom to them
and the heirs of my daughter Mary's body, forever. I
give and bequeath unto my daughter Phœbe Couchman
the upper half of my plantation, to be equally divided
between her and John Craigen as to quality and quantity;
but, should my said daughter die without heirs of her
own body, it is then my will and desire that said half of
my plantation should be divided between my son-in-law
John Craigen and my son Adam See; and, should my son
Adam dispose of the lands whereon he now lives, it is my
desire that John Craigen and Mary, his wife, shall have

Adam's part, on paying to him, the said Adam, three hundred pounds in two annual payments; and also, on the death of my daughter, John Craigen and my son Adam shall pay to my son George See, Jr., one hundred pounds, to Cath. Paul one hundred pounds, to Leonard Stump and Eliza, his wife, one hundred pounds, and to John See's children one hundred pounds, to them and their heirs. * * * I give and bequeath unto John Craigen and Mary, his wife, and to my daughter Phœbe Couchman, an out-survey upon Watt's Run, to be equally divided, and subject to the same rules as the property above divided, to them and their heirs, forever. I also give and bequeath unto my son George See, my son Adam See, my daughter Catty Paul, my daughter Phœbe Couchman, my son-in-law John Craigen and Mary, his wife, my son-in-law Leonard Stump and Eliza, his wife, and to the children of John See, dec'd, one share only of all my property remaining at my decease, and not here divided, to be divided equally amongst them and their heirs. Also, at the death of my beloved wife, it is my will that all the negroes left to her for life should be equally divided amongst my children, and the children of John See to have one child's share, as aforesaid, and to them all and their heirs, forever." The will of John Craigen provides for the immediate sale of his perishable property, not in said will otherwise disposed of, and proceeds applied to his debts; and to his wife, Mary Ann Craigen, he gave the plantation whereon he lived, with all household and kitchen furniture, two plows, one harrow, two work horses, four cows, twelve sheep, twelve hogs, with the gear belonging to the work horses, negroes Tom, Lean, Han, and Henry, for and during her natural life, out of which his children were to be supported until they should marry, provided they remained with their mother, and at marriage were to receive their proportionate share of the movables as an outfit agreeable to those who had been provided for already; and his wife to have full third part of all his lands during the same period, after her decease to be disposed of as in said will directed, all his other lands to be rented, except so much as his executrix might think necessary for the maintenance and support of those of his children who were then married and had families to maintain, or such as might thereafter place

themselves in such position as to require a home; then proceeds to devise to his several children by name, and the heirs of their respective bodies (and, in default of heirs of the body of any one at his death, the share of such to be divided equally among the others or their children), his various tracts of land; and to his youngest daughter, Adaline Louisa, he gave his home place, with four outsurveys in the mountains, "subject to the same limitations, to wit, for and during her natural life, and at her decease to the heirs of her body, and, in default of having any, to revert to the rest of my heirs." On the 2d of October, 1854, the will of Mary Ann Craigen was probated in Hardy County Court, wherein she bequeathed to her daughters Catherine E. Williams and Adaline L. Parran all the estate of which she might die possessed, saving and excepting certain sums of money, secured by deeds of trust executed by James Taylor to George W. Washington, trustee, for testator's benefit, which she bequeathed to a trustee for her daughter Eveline Taylor and her children.

Dr. N. D. Parran married Adaline Louisa Craigen about the year 1836, and resided on the Craigen place from that time until after the death of his wife, Adaline, which occurred about 1872. After his marriage to Miss Craigen, who was his second wife, he seems to have had a rather checkered career from a financial standpoint. He became involved, and in 1843, on his own application, he was declared a bankrupt by the United States district court of the Western district of Virginia, and on October 14th of that year was discharged from all his debts. After this, Dr. Parran continued to live at the Craigen place, and evidently took a very active interest in the affairs of the farm, and did considerable trading for himself, and, before his death, acquired some property at least in his own right, about which no question has been raised. At one time, in December, 1889, he sold a tract of some seven thousand acres of mountain land for four thousand dollars. James Wolf, a witness for appellants, testifies that he bought from him since the war a parcel of land for two hundred and twenty-five dollars; and M. H. See, one of appellants' witnesses, on cross-examination, to the question whether he was acquainted with Dr. Parran, and whether his "stand-

ing in the community as a business man, and honest and honorable man, was not of the very best," says: "I was very well acquainted with him, and his standing was of the very best,—among the best." On the 31st of August, 1852, Dr. Parran purchased three hundred and ten and one-half acres of land from John Stump, known in the record as the "Stump Farm." He paid three thousand dollars cash, and for the residue gave his several bonds for eight hundred dollars each, payable to John Stump, on the 1st days of September, 1853, 1854, 1855, 1856 and 1857, respectively. The deed for this tract of land was acknowledged and admitted to record in the clerk's office of Hardy County Court on the day of its date. There is evidence tending to prove that a part of the money, at least, paid on this farm, was from the Craigen farm, the proceeds of sale of two negroes and of a lot of cattle at different times; and there is conflict of testimony as to the part taken by Dr. Parran in the conduct and control both of the Craigen and Stump farms, some of the witnesses stating that Parran had no control, that Mary Ann Craigen did all the hiring and paying on the Craigen farm, and that John C. Parran built the house on the Stump farm, and managed the whole business, while others say that his father, N. D. Parran, did it, and file receipts for work done on the house, and prove that he hired and paid the expenses and controlled the matter. After the house was built, N. D. Parran moved onto the Stump farm, and worked it until his death. On the 7th day of September, 1887, N. D. Parran and wife, the defendant, Nina A. Parran, executed a deed of trust on said lands sought to be partitioned, including the Stump farm, and on a tract of six thousand seven hundred and sixty-eight acres of mountain land, to Benjamin Bailey, trustee, to secure to Ann E. Covell the sum of three thousand dollars. To show that the plaintiff in the cross bill, John C. Parran, regarded the land as being the property of his father, the defendants introduced two letters written by said John C. Parran, marked "Exhibit C," with deposition of M. W. Gamble, as follows: "Green Spring, W. Va., December 6th, 1889. Dear Pa: I am in receipt of a letter from Wm. Stump, here inclosed, informing me of the sale of your mountain land for the sum of $5,126 dollars cash, you having given him authority—do so. You

after gave Messrs. Pancakes the option for $4,000 on time. You must have forgotten your arrangement with Stump. Your chances for trouble are imminent. Possibly, by Ninnie refusing to sign the deed may save you. In either case one party or the other will claim damage. I write hoping it may reach you before you have gone too far. The 40 acres in Shook's run is not included in your Green & Fleming tract. If you can keep it out, hold it for me. I had thought to have been up long since. Love to all. J."
Also: "Green Spring, W. Va., Dec. 1889. Dr. Pa: I wrote hurriedly, and without knowing just how far you had gone. Have since had a talk with Will Stump, and I cannot see any way but to play out the best you can. It was not your intention formerly to sell all the timber from your Adam See land or your Stump farm, but I find you have made a clean sweep, even the 44 acres in Shook's run that you once sold to me in connection with 2 acres at Abe See's and Adam See's land for $1,500; but, as you failed to make anything out of my part of home place, I give up the said land. I do not write this to embarrass you, but to remind you of the necessity of holding some timber—say, two or more hundred acres—you might reserve from your S. E. of Stump place corner, and running with the top of Stony Run ridge to Adam Harness' line, embracing the land east of Judy's and Neff's. Do not think me officious for offering these suggestions unrequested. I am prompted only by the best motives for your interest. I paid last spring $754 security for parties. This was caused by a man who is now sucking the blood of some one else. That, with short crops last year, and this, has rendered me so thin one might read the declaration on both sides. Yet I am determined to pull through or die in the traces. I wish, if you see Mr. Adam Fisher, ask him if he would want any lime this spring, and, if so, what he will pay at kiln near John Redman's, or what delivered. I saw Will a few days ago. He regrets and condemns Pancake's action, knowing that the land was sold before he came to you, and the price. I am now getting out corn, badly damaged and light. Yours truly, J. C. Parran."

Appellants prove some declarations made by N. D. Parran, to the effect that he had no interest in the Stump farm. Witness George W. Cleaver says: "He told me

often that the Stump place belonged to Virginia and John Parran; and not only that, he told me a short time, a day or two, before Mrs. Parran's death, that he would have not a place to put his head under without it was John and Virginia's request to leave him a home, or stay there." Witness further stated that after the death of Mrs. Parran, when the doctor was talking about building on the Stump place, "he was not able to build himself, without John and Virginia helping him; that it would be coming to them any how after his death, and it was theirs at the time." Witness Mary Stump testified that, on the night of the death of Adaline L. Parran, she "went to console the doctor, and he told me that he hadn't anything on earth; he was homeless, and that everything belonged to Virginia and John." Witness Seymour Thorn says he heard a conversation between Dr. Parran and Mrs. Craigen and Mrs. Parran. The doctor said the Branson place was for sale, and they ought to try and buy it. "They said they would not do it; that he would have it deeded to himself as he did the Stump place." That witness heard N. D. Parran say "the land and house was theirs· at his death, and he was to stay there while he lived. He wanted them to go to the expense of building the house for him to live in, as it was theirs at his death." There is no attempt to prove the sale of the life estate or estate by the curtesy of Dr. Parran in his wife's property, except by oral testimony, which is objected to. Witness Simon Dasher says: "I was present here in Moorefield when his life interest was sold in the Craigen place. As well as I recollect, it was sold or bid in at about $2,100 by Jerrard Williams, if my memory serves me right." There is no evidence whatever that it was ever conveyed, or that N. D. Parran was ever dispossessed thereof. N. D. Parran had no interest by virtue of his marital rights in the "home place" of John Craigen at the time he filed his schedules in bankruptcy, and also at the time it is claimed his life interest was sold, as Adaline Louisa, his wife, took nothing therein until the death of her mother, Mary Ann Craigen, at which time she took a life estate in the estate of John Craigen, under his will, and the one undivided half in fee of whatever interest Mary Ann Craigen had therein, and which by her

will she left equally to Adaline and her sister Mrs. Williams.

The cause came on to be heard on the 13th day of March, 1896, upon the papers formerly read therein, the answer of John C. Parran and W. V. D. Parsons in the nature of a cross bill, and the amended cross bill of the said John C. Parran and W. V. D. Parsons, and upon the answer or special replication in writing to said cross bill and amended cross bill, and upon the second amended cross bill, making certain new parties to the suit, process duly executed thereon, and upon the depositions of witnesses with the objections thereon indorsed and sustained, by the objection of John C. Parran and W. V. D. Parsons; and, being argued by counsel, the court dismissed said answers of John C. Parran and W. V. D. Parsons so far as they are in the nature of cross bills setting up a claim by the said respondents to be the sole owners of the land in the bill and proceedings mentioned, at the cost of said respondents, the court being of the opinion that their said claim was not sustained, from which decree said Parran and Parsons appeal to this Court, and assign the following errors: "(1) The court erred in holding, as it must have been done, under the evidence in this cause, that Dr. Parran had any interest in the home place during the lifetime of Mary Ann Craigen, or his wife, Adaline L. Parran, or that he had curtesy in the home place of any of the outlying surveys after Adaline L.'s death. (2) The court erred in holding that the plaintiffs were entitled to any distributive shares of the lands acquired by Dr. Parran, as shown in this record. (3) The court erred in not holding that Dr. Parran's interest in all the real estate derived by his wife, Adaline, under the wills of John Craigen, Mary Ann Craigen, and Phœbe Couchman, ceased and determined at Adaline's death, and then reverted to petitioners. (4) The court erred in not holding that, as to the Stump place, Dr. Parran was simply a trustee for the petitioners; and, having been by them permitted to live on the farm till his death, all his interest therein ceased at his death. (5) The court erred in dismissing petitioners' cross bill."

It appears from the record that the original answer and cross bill of defendants John C. Parran and W. V. D. Parsons was, by leave of the court, amended by certain inter-

lineations made therein, as designated in the decree authorizing the amendments to be made, and the answer and cross bill as amended only appear in the record. The second amended cross bill simply prays that the certain parties named, the heirs of —— Williams, deceased, be made parties to the suit, and makes no further allegations in addition to those contained in the amended cross bill. The allegations of the cross bill distinctly set up an express trust, alleging that N. D. Parran drew up, or had drawn up, a proper paper writing, duly signed by him, wherein he acknowledged the real ownership of said land (referring to the Stump place) to be in respondents' mother, and providing that upon his death the said respondents should be the owners of the land, and that this was equally true of the other lands sought to be partitioned, and that proper paper writings were signed by said N. D. Parran also as to such other lands, showing that upon his death they should be owned by respondents; that said respondents would file such papers, or, if they could not be found, they would ask leave of the court to prove their contents by oral testimony, which they could easily do, to the satisfaction of the court.

The respondents failed to produce or file such paper writings as they alleged were made and signed by N. D. Parran, acknowledging the real ownership of said lands, or any of them, to be in respondents, and made no attempt to prove by oral testimony the existence of such papers declaring an express trust, excepting by the testimony alone of respondents John C. Parran and W. V. D. Parsons, to the testimony of both of whom objection was made because of their incompetence as witnesses, under section 23, chapter 130, of the Code, and which objection was properly sustained. Respondents allege that the Stump farm was paid for in the lifetime of Mary Ann Craigen. The record does not show the exact date of the death of Mary Ann Craigen, but it was some time in 1853. Her will was admitted to probate October 2, 1854. Respondents rely largely upon the testimony of Seymour Thorn, who testifies that the cattle, the proceeds of the sale of which were for the last two payments on the Stump farm, were sold before the death of Mary Ann Craigen, while the fact is the last annual payment was due not until the fall of 1857; and the evi-

dence shows that N. D. Parran made large payments on said purchase money late in the 50's and one of three hundred and twenty-six dollars on the 27th of April, 1860. "A trust which results by implication and operation of law from the payment of the purchase money, or a part of it, and without any agreement, is a pure and simple trust of the ownership of the land. It is not an interest in the proceeds of the land nor a lien upon it for the advance, nor an equity or right to a sum of money to be raised out of it, or upon the security of it. Such rights arise from special agreements, and are the subjects of express trusts, or, when implied, it is from other circumstances than the mere ownership of the purchase money. There can be no resulting trust of an estate to a particular extent of its value in the grantee. * * * What is known as a resulting trust is a complete trust of original ownership, and it is nothing else. Therefore, to make a partial payment create a resulting trust at all, the money must be paid as a definite aliquot part of the consideration of the purchase, and thus the trust will be of an aliquot part of the whole estate in the property; but, unless the payment or advance be of a definite part of the consideration money as such, no trust will result by implication of law and without agreement." 2 Barb. Ch. Prac. § 288. This Court has gone further, and does not confine a resulting trust in a part, to an aliquot part, but makes it a trust *pro tanto.* "A resulting trust arising from the payment by a stranger of the whole or a part of the purchase money of land conveyed to another is a claim to the whole or a definite portion of the land, corresponding to the portion of the purchase money paid by such stranger, and not a lien upon the land for the sum of money paid by such stranger, as a part of the purchase money." *Shaffer* v. *Fetty,* 30 W. Va. 248 Syl., points 4 and 5 (4 S. E. 278). See, also, *Heiskell* v. *Trout,* 31 W. Va. 810 (8 S. E. 557); *Heiskell* v. *Powell,* 23 W. Va. 717. And where one pays part of the purchase price of land, and a deed is taken in anothers' name, so that a resulting trust arises, so it is certain what amount the one claiming under the trust paid (whether the part paid by an exact division of the whole or not—that is, whether it be an aliquot part or not—is immaterial), this will be a

trust *pro tanto.* There must be certainty as to the interest in the land." *Currence* v. *Ward,* 43 W. Va. 367, Syl., point 6 (27 S. E. 329), in which decision the question is thoroughly discussed by JUDGE BRANNON. "Where the trust does not appear on the face of the deed or other instrument of transfer, a resort to parol evidence is indispensable. It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt. Where the payment of a part only is claimed, the evidence must show, in the same clear manner, the exact portion of the whole price which was paid." 2 Pom. Eq. Jur. § 1040; *Troll* v. *Carter,* 15 W. Va. 567, Syl., point 7; *Armstrong* v. *Bailey* (decided at this term) 28 S. E. 766. "A resulting trust is a mere creature of equity, as a resulting use is of law; and it cannot therefore arise where there is an express trust declared by the parties, and evidenced by a written declaration of such express trust." *Leggett* v. *Dubois,* 5 Paige 114. In *U. S.* v. *Union Pac. R. Co.,* 11 Blatchf. 402, (Fed. Cas. No. 16,598), it is held that, where a trust is express, "implications are thereby excluded."

The evidence adduced by the appellants, taken alone, and without considering much contradictory testimony taken by appellees, is vague and uncertain, and wholly insufficient to establish a resulting trust; and appellants having failed to sustain the allegations of their cross bill alleging the existence of paper writings declaring an express trust, either by producing such papers, or proving their contents, the decree complained of is affirmed, and the cause remanded to the circuit court, to be further proceeded in.

*Affirmed.*