### TETER v. VIQUESNEY.

(Circuit Court of Appeals, Fourth Circuit. May 11, 1910.)

No. 948.

1. BANKRUPTCY (§ 140*)—CONTRIBUTION BY WIFE TO PURCHASE OF PROPERTY.

The wife of a bankrupt filed a petition alleging that some 29 years prior to the bankruptcy her husband's father conveyed to him certain land, which he still owned, valued at $3,000; that $2,000 of the consideration was an advancement and the remainder was to be paid by petitioner, a part of it being evidenced by notes given by her husband; that she furnished her husband with money from her separate estate to make a cash payment and to pay the notes when they matured; that the notes

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

when paid were turned over to her together with the deed, which was unrecorded, to be held by her as security that she should have a proportionate· interest in the land or a vendor's lien thereon for the money advanced. No written agreement was made, the notes were not assigned to her nor was anything ever done to vest her with any title to or lien upon the land which remained in the possession of her husband, who gave a trust deed thereon without objection on her part. *Held* that, under the law of West Virginia, where a wife delivers money or property to her husband which he uses in his business, the presumption is that a gift was intended, the testimony alone of the husband and wife to a parol agreement between them as alleged in the petition was insufficient to overcome such presumption, and entitle petitioner to enforce such agreement as against the bankrupt's creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 216, 225; Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 209*)—PROCEEDING TO ESTABLISH LIEN—PLEADING.

A petition filed in a court of bankruptcy praying that petitioner be adjudged a creditor of a bankrupt and entitled to priority of payment from the proceeds of certain lands cannot be treated as a bill in equity to establish a resulting trust in such lands, which would ·be inconsistent with the relief prayed for.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 318; Dec. Dig. § 209.*]

3. TRUSTS (§ 89*)—RESULTING TRUST—PAROL EVIDENCE TO ESTABLISH.

The uncorroborated testimony of a bankrupt and his wife is insufficient to establish a resulting trust in favor of the wife in lands which were conveyed to the husband nearly 30 years prior to the bankruptcy and have been held by him without objection since that time.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 134–137; Dec. Dig. § 89.*]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi, in Bankruptcy.

In the matter of Thomas B. Teter, bankrupt. Appeal by Mary Sophia Teter from an order of the District Court in bankruptcy. Affirmed.

For opinion of lower court, see 173 Fed. 798.

T. B. Teter was adjudged a bankrupt on the 16th of March, 1909, and on the same day an order was entered referring the matter to Referee George P. Shirley. On the same day, appellant filed her petition before the referee claiming that, in respect to the land embraced in a deed dated February 3, 1880, executed by Jesse Teter to the bankrupt, his son, for two tracts of land containing, respectively, 167 acres and 120 acres, she was entitled to be adjudged a preferred creditor of the bankrupt to the extent of $1,000, advanced by her in the purchase of said land by an understanding to the effect that the money invested by her was to be returned to her, either in land or money; that the true consideration for the deed was $2,000, advanced by the father, Jesse Teter, to his said son, in consideration of $1,000 to be paid the grantor by appellant, and that she fully paid the same, and that she has never been repaid, in money or its equivalent in land; that the deed and the deferred purchase-money notes were all delivered to appellant and held by her from the date of the deed until this date as security for the money advanced; that $250 was paid in hand upon delivery of the deed and three notes for a like amount secured by a vendor's lien thereon. The depositions taken are those of Sophia Teter herself, Floyd Teter, her brother-in-law, and her brother, O. G. Price Durett. Three depositions of Jesse Teter, W. W. Teter, and Minnie Teter, all dead, were lost from the records in Kanawha county, W. Va. The referee, by an order entered June 22, 1909, held appellant entitled to charge the land

as a preferred creditor of the bankrupt, to the extent of the said $1,000. Upon a petition for a review by the trustee in bankruptcy, the court below reversed the action of the referee, and held that appellant was not a preferred creditor, nor a general creditor, and that her claim was barred by the lapse of time.

J. Hop Woods and Samuel V. Woods, for appellant.

William T. George, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). As appears from the statement of facts, Jesse Teter and wife, the father and mother of the bankrupt, on the 3d day of February, 1880, conveyed to Thomas B. Teter, the bankrupt, two tracts of land situated in Barbour county, W. Va., containing 167 and about 20 acres, respectively, and the consideration recited in the said deed was $1,000, $250 paid cash in hand, and three notes for $250 each, secured by a vendor's lien, retained for the residue. However, it appears that the true consideration of the said conveyance was $3,000, $2,000 of which was an advancement by the said Jesse Teter to his son, Thomas Teter, the bankrupt. The appellant, Mary Sophia Teter, the wife of the bankrupt, avers that she furnished her husband the $250 for the cash payment on the land, and that she furnished her husband the money with which to pay off and take up the purchase-money notes, aggregating $750; that said notes, when paid off and taken up, were turned over to her by her husband, as was the deed for the said land, and that she has been in possession of the same from that time up to the time the petition was filed. The petitioner is not a party to the deed from the said Jesse Teter and wife for the lands, nor is there any statement contained in said deed to the effect that she paid the notes in question, or that she was to have any interest in the lands thus conveyed. There was no written agreement or understanding between Jesse Teter and Mary Sophia Teter nor between Thomas B. Teter and Mary Sophia Teter to the effect that the vendor's lien, which was held by Jesse Teter, was to be assigned to the said Mary Sophia Teter, or the said land retained in said deed, by reason of her having paid the notes; neither does it appear that there was any oral understanding to that effect. The learned judge who tried this case made the following statement, which gives a clear insight into the transaction by virtue of which the petitioner now seeks to establish her claim:

"The agreement charged to have been made at the time the two tracts of lands were conveyed by his father to the bankrupt was that the petitioner should pay the $1,000, and have conveyed to her the land in value to the extent of such payment, or that a vendor's lien was to be retained upon the land to secure her the repayment of her money. Neither of these things has ever been done, and, after the lapse of twenty-nine years, the question arises whether the pleading and evidence justifies equity and good conscience to do either for the relief of petitioner, against the creditors. The decision of the referee is in effect to charge this $1,000 with its accumulated interest, in the nature of a purchase-money lien, upon the land as having priority over all other debts except the life estate of Elizabeth Teter. This practically means

,that the wife of the bankrupt shall absorb the whole value of the lands, and the creditors shall take nothing. It seems to me this is clearly untenable. Taking the most favorable view possible to this ruling, and quoting the testimony alone of Mrs. Teter, it seems clear that the deed was made direct to her husband by his father; that the lands were worth at the time $3,000; that she took no written evidence of the agreement; that she did not pay the thousand dollars or any part of it to the grantor, James Teter, but 'furnished' it to her husband partly in money and partly in stock, apparently which he sold, who paid it to his father who surrendered the notes to her husband as paid, and he in turn delivered them over to her with the deed. She says the deed was delivered to her, and has been in her possession since about six months after its date, and the notes were delivered to her by her husband as of the times when he discharged them. They were not assigned to her, and her sole claim to enforce an equitable lien against the land in her favor, independent of oral agreement with her husband, rests upon her possession of the title deed and these notes. I can find no authority warranting me to hold the possession of this deed and of these notes under these circumstances as constituting an equitable assignment to her by Jesse Teter of the existing vendor's lien in his favor. A vendor is not ordinarily compelled to receive payment for and assign to a third person such a lien. Jesse Teter, the father-in-law, might have been entirely willing to have done so, and it is incomprehensible, why he did not do so, if at the time it was contemplated to secure this petitioner this money by and through his existing vendor's lien. Therefore, independent of all questions of trust relations, the whole matter resolves itself into this: Mrs. Teter loaned her husband this money for which she took from him no note or evidence of debt of any kind; with this money he paid off and discharged the vendor's lien to his father; the only way Mrs. Teter sought to secure herself for the money so loaned her husband was, six months after its execution, to take possession of the deed and these notes as her husband paid and delivered them to her. They were living together, and her possession was in fact his. A line of decisions in this state has fully established the principles that where a wife delivers money or property of her own to her husband which he uses in his business the presumption is that such delivery was intended as a gift, and when the facts and circumstances tend to show that a gift was intended, and that the husband used and dealt with the property as his own, the mere parol testimony of the husband and wife of a private understanding between themselves that the transaction should be considered or was intended as a loan to the husband by the wife and not a gift will not, as against the creditors of an insolvent husband, rebut the presumption of a gift. Zinn v. Law, 32 W. Va. 447 [9 S. E. 871]; Maxwell v. Hanshaw, 24 W. Va. 405; McGinnis v. Curry, 13 W. Va. 29; Bank v. Atkinson, 32 W. Va. 203 [9 S. E. 175]. And in this last case it is held that the fact that the wife's claim for money of hers received by her husband from the sale of her lands was barred by limitation tends strongly to repel her claim as against her husband's creditors.

"This money of Mrs. Teter's was received by her husband, it may be assumed, at various times between February 3, 1880, the date of the deed, and September 1, 1885, when the last note was payable. The evidence does not clearly establish the amount in a sum exceeding $811.50, unless we assume she increased the sums received by her from her father and aunt by investment and loans at interest which are not shown by the evidence. The first effort attempted to secure repayment of this money was not made until after her husband had become Williamson's surety on his sheriff's supplemental bond, judgment for $10,000 had been rendered in favor of and a chancery suit had been instituted for its enforcement by the state. Then she filed her petition in this chancery suit asserting her claim as a debt due her based upon the same facts set forth here. The exact date of the filing of this answer is not shown, but it was not filed before 1895, because the suit was not instituted until that year, and it is probable it was not filed until the following year, 1896, when her depositions were taken in support of it. Thus, for 10 years at least, she allowed this money to remain in her husband's hands with no written evidence of it having been loaned to him, with him in full posses-

sion of the land, with no assignment from her father-in-law of the notes, which she says her money paid, although such assignment could have been taken from him any time prior to his death, with no judgment taken by her, no trust or mortgage lien taken on the land, although such actions could have been taken at any time apparently, in short, with nothing done in accord with legal methods to indicate that this money was to be saved to her as her separate estate. It is true that great reliance is made upon the facts that the deed was not recorded, but together with the notes, when paid off by her husband, were placed in her custody, as claimed, for security for her debt. That this was the purpose of withholding the deed from record instead of for other reasons, such as the existence of the life estate outstanding in Elizabeth Teter, and that she had the custody of the deed for the purpose of security, is alone proven by the husband and wife. It does not impress me, if this evidence be admitted to be sufficient to establish the facts claimed (although the authorities cited seem clearly to hold it is not) that the mere possession of these papers alone constituted any security for this debt. It could vest no title in her to the land, nor could it give her any lien upon it, nor could it, with no assignment of any kind, transfer to her the vendor's lien retained by the grantor upon it. We must necessarily sympathize with the wife who must lose her money by reason of the bad management of her husband, but at the same time, we cannot forget that the relation of husband and wife is such, that their transactions with each other must be closely scrutinized. The temptation to husband and wife to shield each other, as against creditors, when insolvency comes, is almost irresistible to most people. If we were to hold that a man could pay off his purchase-money notes secured by vendor's lien, place these notes and his deed in his wife's custody, and thereby empower her, 29 years afterwards, when he was bankrupt and after he had executed a trust upon the land for a large amount (as Teter sets forth in his schedule he has done), to revive and enforce the vendor's lien to the extent of the notes and accumulated interest in her favor, because it is claimed she allowed him to use her money, the door to fraudulent transactions between husband and wife as against innocent creditors would be thrown wide open."

In the case of Zinn v. Law, 32 W. Va. 447, 9 S. E. 871, the first syllabus reads as follows:

"Where, the wife delivers money or property of her own to her husband, which he uses in his business, the presumption is that such delivery was intended as a gift; and in order to constitute such delivery a loan against the creditors of the husband, the wife must prove an express promise of the husband to repay, or establish by circumstances that it was a loan, and not a gift."

While, under such circumstances, this presumption arises, it does not necessarily follow that it cannot be rebutted by proper testimony, and this the petitioner has undertaken to do. But has she offered sufficient legal evidence to accomplish that purpose?

It appears that this money was furnished 29 years prior to the filing of the petition, and it does not appear that any deed was ever made to her by her husband in pursuance of the alleged agreement, and it further appears that she had knowledge of the conveyance of this identical property to Fred. O. Blue, trustee, and that she interposed no objection to the same, nor did she at that time notify the said Blue that she had any claim or interest whatsoever in this property. Under such circumstances, and owing to the relationship which exists between husband and wife, we do not think that the evidence offered is sufficient to rebut the presumption that the money furnished to the husband was intended as a gift.

In the case of Zinn v. Law et ux., supra, the court said:

" * *, * It is not denied, as a general proposition, that if a clearly valid, subsisting debt is established by a wife against her husband he may pay it or prefer it in the conveyance of his property. But, where a husband becomes insolvent, the wife cannot convert into debts, as against his creditors, former deliveries of her money or other property to him, or permitted receipts by him of her income or proceeds of her separate estate, which at the time of such delivery or receipt were merely gifts intended by the wife to assist her husband in his business, or to pay their common expenses of living; and, considering the relation between them, the law does not, merely from such delivery or receipt, imply a promise on the part of the husband to repay or replace the same, as it would between parties not so related; but it requires more—there must be either an express promise, or circumstances attending the transaction to establish the fact that they dealt with each other as debtor and creditor. It would be exceedingly dangerous to permit the wife, after she has allowed her husband to use and expend her means for the common benefit of themselves and their children, without any expectation of any return, or the creation of a debt, when by mismanagement or misfortune of the husband he becomes unable to pay his debts, to raise up these gifts, and convert them into loans to the prejudice of creditors, and support them by their own evidence, after they had trusted the husband in total ignorance of any such liability. In transactions between husband and wife, which are impeached as fraudulent, it requires less proof to sustain the impeachment, and more and stricter proof to repel it, than would be required if the transaction were between strangers. * * *

"In the absence of an express contract or circumstances, the legal presumption is that the delivery of the money to her husband was a gift, and, as she has entirely failed to rebut this presumption, we must hold that such delivery was a gift. There is no pretense of an express promise by the husband to repay the money. It is true the wife says that by an oral agreement she made her husband her agent, and that the money was furnished to him with the understanding that the mill was to be her property when purchased. But all the circumstances repel this claim. The husband purchased the first mill before she furnished him any money. He made all the subsequent trades, and did all the business in his own name. He claimed the mill as his own; gave a lien upon it to secure his own debt; paid that debt from his own labor and the profits of the mill. In none of these transactions was his wife mentioned, nor did she in any respect make her claim known to any one dealing with her husband. It is entirely fair to conclude, from all the facts and circumstances, that the suggestion of a loan or the investment of the wife's money for her separate use never occurred to either the wife or the husband until insolvency overtook the husband, and some plausible device became necessary to shield the property from the pursuit of creditors. * * *"

The cases of Bank v. Atkinson, 32 W. Va. 203, 9 S. E. 175, McGinnis v. Curry, 13 W. Va. 29, and Maxwell v. Hinshaw, 24 W. Va. 405, also sustain this principle.

So far as the record shows, no one testified other than herself and husband as to the transaction upon which the petitioner bases her claim. It is true that the brother of the petitioner, O. G. P. Durrett, and her brother-in-law, Floyd Teter, testified as to their understanding in regard to the intention of Thomas B. Teter and the petitioner respecting what interest the petitioner was to have in the lands. But the record discloses the fact that neither of these witnesses testified of their own knowledge of these matters, while on the other hand their testimony was based solely upon rumor; and in this respect it is not positive in its character and is, therefore, insufficient to rebut the presumption that the turning over of the money to the husband was intended as a gift.

It is insisted by counsel for the petitioner that she has established a resulting trust in these lands in her favor. We are at a loss to know upon what theory this contention is based, in view of the allegations contained in the petition. The petition filed herein contains the following prayer:

"Your oratrix therefore prays, that she may be ascertained and held to be a creditor of Thomas B. Teter, and entitled to priority of payment out of the proceeds of the land mentioned in the deed dated the 3d day of February, 1880, to the extent of five hundred ($500.00) dollars, with interest from one day after date; two hundred and fifty ($250.00) dollars, with interest from the 1st day of May, 1881, and to the extent of two hundred and fifty ($250.00) with interest from the 1st day of September, 1885."

If, indeed, the petitioner be entitled to come into a court of bankruptcy, and, by parol evidence, establish a resulting trust, she certainly would be required to observe the same formalities in pleading that she would had she gone into a court of equity and there sought the relief which she now seeks. This she has not done in this instance, and the petition filed herein could not be treated as a bill in equity for the purpose of establishing a resulting trust. The prayer is wholly inconsistent with the relief sought in this respect, it being to the effect that she be declared to be a creditor of Thomas B. Teter and entitled to priority of payment out of the proceeds of the land in controversy.

To contend that petitioner is entitled to a resulting trust in these lands, is to assume a position inconsistent with the prayer contained in the petition. There is nothing in the record to show that the petitioner endeavored to amend her petition so as to enable her to base her claim upon the ground that she is entitled to a resulting trust in these lands. But even if, under the pleadings, petitioner would be entitled to have the question passed upon as to whether she is entitled to assert this right in this proceeding, the evidence is wholly insufficient to sustain her contention in that respect, to say nothing of the fact that the loan was made to the husband in 1880. If the questions which the petitioner seeks to raise were properly presented in this proceeding by appropriate pleading and sufficient evidence, we are inclined to the opinion that the petitioner would not, at this late date, be entitled to assert a claim to this property, after having acquiesced in the holding of the same by her husband during all these years. Such rights, if any ever existed, under these circumstances, were barred by laches at the time of the filing of the petition.

In the case of Coleman v. Parran, 43 W. Va. 737, 28 S. E. 769, the following statement from Pomeroy's Equity Jurisprudence (section 1040) is quoted with approval:

"Where the trust does not appear on the face of the deed or other instrument of transfer, a resort to parol evidence is indispensable. It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt. Where the payment of a part only is claimed, the evidence must show, in the same clear manner, the exact portion of the whole price which was paid."

In the case of Cheuvront v. Horner, 62 W. Va. 476, 59 S. E. 964, it is said:

"The evidence relied upon by Horner and his wife to rebut the presumption of fraud in the transfer of the property by the husband to the wife falls short of the rule that the burden is upon the wife to show by clear and satisfactory evidence that the transaction was made in good faith, the consideration adequate and valuable, and that the consideration was paid out of her separate estate. All the testimony on this line, and in relation to these conveyances of the property from husband to wife, we find to be either wholly uncertain as to the amount of money claimed to have been invested in the property of the wife, or to be of questionable and suspicious character. This testimony is wholly insufficient to meet the rule that when a wife claims in a contest against the creditors of her husband to have purchased real estate there is a presumption against the bona fides of the transaction, which she cannot overcome except by clear and full proof that the property was paid for by her with money derived from some other source than her husband. Miller v. Gillispie, 54 W. Va. 450 [46 S. E. 451]; Burt v. Timmons, 29 W. Va. 441 [2 S. E. 780, 6 Am. St. Rep. 664]; Spence v. Smith, 34 W. Va. 697 [12 S. E. 828], and many other cases. The claim undertaken to be made by this testimony on behalf of the husband and wife is that there was a secret parol agreement, at the time of the purchase of the property, that the husband was to hold it in his name in trust for the wife, and the wife in her testimony says that this was to give him a better rating in business. The only evidence of such secret trust is that of the husband and wife. This cannot overcome the presumption nor prevail against the creditor in such case."

While there are some statements in the petition tending to show that, among other things, it is the claim of the petitioner, that she is entitled to be subrogated to the rights of the vendor, upon the theory that she paid the purchase money, and that, therefore, she should be permitted to enforce the collection of the money due her under the original vendor's lien. This claim, however, is not seriously insisted upon in this court, as we understand it; but if it were, we are inclined to the opinion that the evidence is not sufficient to sustain such contention.

For the reasons hereinbefore stated, we are of opinion that there is no error in the ruling of the court below, and that the judgment of that court should be

Affirmed.